**Kerry L. WILLARDSON, Petitioner,**

v.

**INDUSTRIAL COMMISSION of Utah; Beaver Creek Coal Co.; Cigna Insurance Co.; and the Employers' Reinsurance Fund, Respondents.**

**No. 920165–CA.**

Court of Appeals of Utah.

June 28, 1993.

---

Virginius Dabney, Salt Lake City, for petitioner.

Steven J. Aeschabacher, George S. Adondakis, Erie V. Boorman, and Robert J. Shaughnessy, Salt Lake City, for respondents.

Before BILLINGS, GARFF and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Petitioner Kerry L. Willardson appeals from the Industrial Commission's denial of permanent total disability benefits. The Commission denied benefits because it found no medical causation between the industrial accident and petitioner's disability. We affirm.

## BACKGROUND

Based upon a claim that he injured his back in an industrial accident, petitioner sought permanent disability benefits from the Industrial Commission (the Commission). During the hearing on petitioner's application for benefits, he acknowledged a substantial medical history of pre-existing back problems. According to petitioner, he first injured his back in 1970 while working in Colorado and underwent a lumbar laminectomy in 1971. He sought further treatment for pain in his back, shoulders and left hip in 1983. His treating physician ordered x-rays and diagnosed petitioner as having severe degenerative osteoarthritis of the lumbar spine with multi-level degenerative disc disease and scoliosis. In January of 1988 he was injured during a fall at home. This accident caused a thoracic-cervical strain/sprain, intervertebral disc syndrome, and brachial extension neuralgia of the right shoulder and arm, for which petitioner received medical treatment nineteen times during the next three months.

On the date of the alleged industrial injury, April 15, 1988, petitioner, who was fifty-seven years old, had worked for Beaver Creek Coal Company (respondent) for about three years as a conveyer belt supervisor. Petitioner testified that he was replacing heavy wire mesh guards on a conveyer belt so that no rock would fall off the belt. While trying to jerk one of the guards free from its stack, petitioner stated that he felt a sharp pain in his lower back at about belt level. Because of the pain, he left work.

Although petitioner was treated that same day by Dr. Kotrady, he did not mention jerking wire screens as the cause of his discomfort. Dr. Kotrady ordered x-rays and diagnosed petitioner as having severe degenerative arthritic hips, pelvis and lumbar spine; degenerative disc disease at all levels of the lumbar spine; and scoliosis. Similarity between these x-rays and those taken in 1983 indicated that the degenerative arthritis and disc disease pre-existed the industrial accident. Dr. Kotrady told petitioner he could return to work the next week. However, due to recurrent pain, petitioner sought further treatment. This treatment, which included a CT scan, disclosed extensive degenerative and arthritic lumbar changes, but no fractures or acute herniations.

Beginning on April 30, 1988, Dr. Heiner and Dr. Gaufin both treated petitioner. Although neither doctor had petitioner's prior medical records, they indicated by filling in blanks on forms provided by petitioner's attorney, that one-half of petitioner's lumbar spine impairment was due to the April 15, 1988 industrial accident and one-half to pre-existing conditions. Dr. Gaufin rated petitioner with a fifteen percent whole person impairment, while Dr. Heiner rated petitioner with a thirty percent whole person impairment.

Petitioner filed for permanent total disability benefits in 1988. In response to petitioner's claim, respondent argued that even if he did sustain a compensable industrial injury, his current disability was an inevitable consequence of his pre-existing condition.

After a hearing and review of the medical records, the administrative law judge (ALJ) found that petitioner had not established by a preponderance of the evidence that the incident on April 15, 1988 contributed to his disability. Further, the ALJ concluded that the disability after April 15, 1988 resulted from petitioner's long-standing degenerative condition in his lumbar spine. Without referring the matter to a medical panel, the ALJ dismissed petitioner's claim for failure to establish a compensable industrial injury. Petitioner then filed a request for review with the Commission. The Commission essentially adopted the ALJ's findings and conclusions and affirmed the ALJ's order. This appeal followed.

## ISSUES

On appeal petitioner (1) challenges the finding that the industrial accident was not the medical cause of petitioner's disability, (2) claims the ALJ applied the wrong standard of proof, and (3) argues the ALJ abused her discretion by failing to convene a medical panel.

## ANALYSIS

### Standard of Review

The Commission's findings of fact regarding medical causation "will be af-firmed if they are 'supported by substantial evidence when viewed in light of the whole record.'" *Stewart v. Board of Review*, 831 P.2d 134, 137 (Utah App.1992) (quoting *Merriam v. Board of Review*, 812 P.2d 447, 450 (Utah App.1991)). *See also* Utah Code Ann. § 63–46b–16(4)(g) (1989). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Department of Air Force v. Swider*, 824 P.2d 448, 451 (Utah App.1991) (citations omitted.)

We review the Commission's interpretation of general questions of law under a correction-of-error standard, with no deference given to the expertise of the Commission. *Questar Pipeline v. Tax Comm'n*, 817 P.2d 316, 317–18 (Utah 1991); *King v. Industrial Comm'n*, 850 P.2d 1281, 1285 (Utah App.1993). Statutory interpretation or application by the Commission will be reviewed without deference unless there is an express or implied grant of discretion to the Commission. *Morton Int'l, Inc. v. Tax Comm'n*, 814 P.2d 581, 589 (Utah 1991). Because the Commission has issued a rule limiting the discretion granted to it under Utah Code Ann. § 35–1–77(1)(a) (1988), concerning when it may appoint a medical panel, we review the agency's action for reasonableness under Utah Code Ann. § 63–46b–14(h)(ii). *See SEMECO v. Tax Comm'n*, 849 P.2d 1167, 1174 (Utah 1993) (Durham, J., dissenting).

### Medical Causation

We first address petitioner's contention that the industrial accident was a medical cause of his disability. Utah Code Ann. § 35–1–45 (1988) mandates compensation where a sufficient causal connection exists between the disability and the working conditions. A claimant must establish both legal and medical causation in order to find a compensable injury under Utah's workers' compensation scheme. *Miera v. Industrial Comm'n*, 728 P.2d 1023, 1024 (Utah 1986). Medical causation demands that petitioner "prove [his] disability is

medically the result of an exertion [1] or injury that occurred during a work-related activity." *Allen v. Industrial Comm'n*, 729 P.2d 15, 27 (Utah 1986). If "the claimant cannot show a medical causal connection, compensation should be denied." *Id.* Only those injuries which occur because some condition or exertion required by employment increases the risk of injury which a worker normally faces in his everyday life is compensable, while symptoms which coincidentally appear at work because of a preexisting condition without any enhancement from the work place are not compensable. *Id.* at 25.

> Generally, industrial injuries that aggravate or "light up" pre-existing conditions and are causally connected to the subsequent onset of symptoms of the disease or condition, are compensable.... [but,] a claimant must prove the subsequent disability is "medically the result of an exertion or injury that occurred during a work-related activity ... and not solely the result of a pre-existing condition."

*Virgin v. Board of Review*, 803 P.2d 1284, 1288 (Utah App.1990) (quoting *Allen*, 729 P.2d at 27). *See also Lancaster v. Gilbert Dev.*, 736 P.2d 237 (Utah 1987); *Olsen v. Industrial Comm'n*, 776 P.2d 937, 939 (Utah App.1989) *aff'd*, 797 P.2d 1098 (Utah 1990). The ALJ has the responsibility to resolve factual conflicts. *Lancaster*, 736 P.2d at 241.

■ Petitioner concedes that he has a lengthy medical history of pre-existing back problems. His medical records indicate that for some seventeen years before the date of the alleged industrial injury, petitioner had undergone extensive treatments for his back problems, which included degenerative arthritis, disc disease and scoliosis. The x-rays taken on April 15, 1988 were similar to those taken in 1983, demonstrating the presence of degenerative arthritis and disc disease, but not indicating fractures or acute herniations. Accordingly, no surgery was needed to correct any problem allegedly aggravated by the incident on April 15, 1988. In light of petitioner's pre-existing physically degenerative condition, he bore the burden of proving that the April 15, 1988 injury he sustained was not his physical body's inevitable breaking point.

While petitioner argues that his work activities while jerking the belt screens aggravated his pre-existing disability, the evidence before the ALJ does not unequivocally support that contention. Although both Dr. Heiner's and Dr. Gaufin's reports diagnosed petitioner as suffering from degenerative osteoarthritis and rated him respectively with a thirty and fifteen percent impairment, neither explained the relationship of the impairment to the industrial accident. Therefore, their attribution of fifty percent of petitioner's impairment to the industrial accident lacks a rational or factual basis. The ALJ also found the attribution to be further weakened because the doctors used pre-printed fill-in-the-blank forms in which they merely inserted a percentage figure and because they did not have or refer to petitioner's prior medical history. The ALJ's finding of "no medical causation" was also based on Dr. Kotrady's medical opinion of pre-existing medical condition.

We find substantial evidence in the record to support findings that the 1988 injury was not the medical cause of petitioner's disability and that his pre-existing condition caused his disability. "Where the disability is the result of pre-existing conditions and not an industrial accident, a claimant is not entitled to disability benefits." *Large v. Industrial Comm'n*, 758 P.2d 954, 957 (Utah App.1988). *See also Giesbrecht v. Board of Review*, 828 P.2d 544, 547 (Utah App.1992).

### Standard of Proof

■ Petitioner also argues the ALJ applied the wrong standard of proof to his claim for benefits. The ALJ's conclusions of law state that "the preponderance of the medical evidence strongly suggests that the applicant's symptoms and disability af-

---

1. "[T]he key question in determining causation is whether, given this body and this exertion, the exertion in fact contributed to the injury." *Allen v. Industrial Comm'n*, 729 P.2d 15, 24 (Utah 1986) (citations omitted).

ter April 15, 1988 were the result of his long-standing and significant degenerative condition in his lumbar spine and were not the result of *any significant contribution* by the activities of April 15, 1988." (Emphasis added.) Petitioner correctly asserts that there is no requirement in the applicable statute that the work-related activities "significantly" contribute to an injury in order for a compensable industrial accident to occur. The only requirement is that there be a medical and legal causal relationship between petitioner's condition and work-related activities, significant or otherwise. *Allen v. Industrial Comm'n*, 729 P.2d 15, 25 (Utah 1986).

■ However, the correct "preponderance of medical evidence" standard of proof clearly prefaced the ALJ's medical causation conclusions. Considering both the record and the ALJ's order as a whole, we agree with the Commission that the ALJ's usage of the word "significant" was merely unintended surplusage; which constitutes only harmless error [2] and does not alter the ALJ's determination of no medical causation. We are persuaded that the ALJ and, more importantly, the Commission,[3] did not use a "significant contribution" standard to determine the existence of medical causation. Rather, as discussed above, the ALJ found no credible medical evidence to relate petitioner's current disability to the industrial accident. Thus, we find no reversible error.

### Medical Panel Referral

■ Finally, petitioner argues that because a causal connection between his injury and his employment depends on the production and interpretation of medical evidence, the ALJ abused her discretion in not referring the medical causation aspect of the case to a medical panel. Petitioner, however, bases this claim on the Commission's application of its own rules, and we review such application under a reasonableness and rationality test. *Ashcroft v. Industrial Comm'n*, 855 P.2d 267, 269 (Utah App.1993).

■ Appointment of a medical panel is addressed in Utah Code Ann. § 35–1–77(1)(a) (1988) as follows:

Upon the filing of a claim for compensation for injury by accident, or for death, arising out of or in the course of employment, and if the employer or its insurance carrier denies liability, the commission *may refer the medical aspects of the case to a medical panel* appointed by the commission.[4]

(Emphasis added.) This statute grants the Commission the discretion to appoint a medical panel, but does not require it in all cases. *Ashcroft*, 855 P.2d at 269; *Intermountain Health Care v. Industrial Comm'n*, 839 P.2d 841, 845 (Utah App. 1992).

■ However, the Commission has adopted a rule implementing the statute, which limits the Commission's discretion by identifying circumstances when a medical panel "will be utilized." *Ashcroft*, 855 P.2d at 269. This rule states:

A. A panel will be utilized by the Administrative Law Judge where:

1. One or more significant medical issues may be involved. Generally a significant medical issue must be shown by conflicting medical reports. Significant medical issues are involved when there are:

---

2. An error is harmless if it is " 'sufficiently inconsequential that ... there is no reasonable likelihood that the error affected the outcome of the proceedings.'" *Morton Int'l, Inc. v. Tax Comm'n*, 814 P.2d 581, 584 (Utah 1991) (quoting *State v. Verde*, 770 P.2d 116, 120 (Utah 1989).

3. *See Virgin v. Board of Review*, 803 P.2d 1284, 1289 (Utah App.1990) (the Commission, in reviewing the evidence presented to the ALJ, is the ultimate fact finder).

4. Prior to 1982 the statute was mandatory, and provided as follows:

Upon the filing of a claim for compensation for injury or by accident or for death arising out of or in the course of employment and where the employer or insurance carrier denies liability, the commission *shall refer the medical aspects of the case to a medical panel* appointed by the commission. Utah Code Ann. § 35–1–77 (1953).

(Emphasis added.)

(a) Conflicting medical reports of permanent physical impairment which vary more than 5% of the whole person.

Utah Adm.Code, R568-1-9 (1993).[5]

 Petitioner argues that the Commission's rule required review of his case by a medical panel, because there were medical reports which conflicted as to the extent of his impairment by more than five percent— Dr. Gaufin reported a fifteen percent impairment, while Dr. Heiner indicated a thirty percent impairment.

Petitioner's argument, however, overlooks the critical threshold issue which precedes the requirement of review by a medical panel. Before discrepancy in reports of impairment is relevant, an ALJ must find credible evidence of medical causation. Because the Commission found no credible evidence to support a finding of medical causation, any conflict over impairment ratings is irrelevant and the rule is inapplicable. We conclude, therefore, that the ALJ did not abuse her discretion by failing to refer the medical causation issue to a medical panel.

## CONCLUSION

Accordingly, we affirm the Commission's denial of permanent total disability benefits to petitioner.

BILLINGS and GARFF, JJ., concur.

---

5. Adoption of this rule is consistent with the Utah Supreme Court's *Morton* decision, holding that the legislature may explicitly grant discretion to an administrative agency. *Morton Int'l Inc. v. Tax Comm'n,* 814 P.2d 581, 589 (Utah 1991). It follows that the agency can then act by rule to limit its own discretion, so long as such action is not inconsistent with the implementing legislation. *Ashcroft,* 855 P.2d at 269.