**Kerry WILLARDSON, Petitioner,**

v.

**INDUSTRIAL COMMISSION OF UTAH, Beaver Creek Coal Company, and Employer's Reinsurance Fund, Respondents.**

No. 930442.

Supreme Court of Utah.

Oct. 6, 1995.

Robert A. Bentley, Virginius Dabney, Salt Lake City, for Willardson.

Jan Graham, Att'y Gen., Alan Hennebold, Asst. Att'y Gen., Thomas C. Sturdy, Sharon J. Eblen, Salt Lake City, for Industrial Commission.

Steven J. Aeschbacher, George S. Adonakis, Salt Lake City, for Beaver Creek Coal Co.

Erie V. Boorman, Salt Lake City, for Employer's Reinsurance Fund.

HOWE, Justice:

We granted certiorari to review a decision of the court of appeals affirming an order of the Industrial Commission refusing to convene a medical panel to evaluate the impairment of petitioner Kerry L. Willardson. *Willardson v. Industrial Comm'n,* 856 P.2d 371 (Utah Ct.App.1993). He had filed a claim for workers' compensation benefits for a back injury he allegedly suffered while working as a conveyor belt supervisor for Beaver Creek Coal Company in April 1988.

Willardson's medical records reveal a history of back problems dating from 1970. He underwent a lumbar laminectomy in 1971 and was diagnosed with severe osteoarthritis and degenerative disc disease of the lumbar spine in 1983. In early 1988, he fell off a ladder, causing a thoraco-cervical strain/sprain, intervertebral disc syndrome, and brachial extension neuralgia of the right shoulder and arm.

On April 15, 1988, Willardson, as a conveyor belt supervisor, was responsible for cleaning and maintaining a one- and one-half-mile-long conveyor belt. That day, he was re-guarding the belt, i.e., replacing wire mesh guards that were fastened to the belt lengthwise to prevent rock on the belt from falling off. The process involved climbing, stretching, reaching, and twisting motions. After hanging about fourteen or fifteen guards, each of which weighed twenty to twenty-five pounds, he felt a sharp pain in his hip and lower back. He lay down flat on his back. When the pain did not subside, he left work and sought medical care.

Willardson was treated by Dr. Konrad P. Kotrady at the Emery Medical Center. Dr. Kotrady ordered x-rays and diagnosed his condition as severe degenerative arthritis in the hips, pelvis, and lumbar spine; degenerative disc disease at all levels of the lumbar spine; and scoliosis. On the Commission's form entitled "Physician's Initial Report of Work Injury or Occupational Disease," Dr. Kotrady indicated that Willardson was injured while re-guarding the belt. In response to the question "Is the condition requiring treatment the result of the industrial injury or exposure described?" Dr. Kotrady checked both the "yes" and the "no" boxes and explained, "Degenerative arthritis and disc disease preexisted this injury—X-ray evidence in 1983."

In the latter part of April, Willardson spent eight days at Castleview Hospital for hip pain radiating into the groin and for lower back pain. His admittance report states that he was injured on April 15, 1988, in an industrial accident. A CT scan disclosed multi-level degenerative and osteoarthritic changes in his lumbar spine.

Following his hospital stay, Willardson saw Dr. David R. Heiner in Castle Dale, Utah. He referred Willardson to Dr. L. Gaufin, a neurologist in Provo, for a specialist's opinion. Although neither Dr. Heiner nor Dr. Gaufin had the benefit of Willardson's prior medical records, they both personally examined him and diagnosed extensive degenerative and arthritic changes at every level of his lumbar spine. In addition, they each

completed a fill-in-the-blank "Summary of Medical Record" form. On the forms, Dr. Heiner rated Willardson's whole person impairment at thirty percent, while Dr. Gaufin rated his whole person impairment at fifteen percent. Both doctors attributed one-half of his impairment to his preexisting condition and one-half to the April 15 industrial accident. In response to the question "Is there a medically demonstrated causal relationship between the industrial injury and the problems you have been treating?" both doctors answered "yes."

On September 24, 1990, Willardson filed a claim with the Commission for permanent total disability benefits. His counsel sought to have the administrative law judge (ALJ) convene a medical panel on the ground that there was a conflict in the evidence as to the level of Willardson's permanent physical impairment, i.e., Dr. Heiner's rating of thirty percent impairment and Dr. Gaufin's rating of fifteen percent impairment. Willardson's counsel contended that under rule 568–1–9(A)(1)(a) of the Utah Administrative Code, such a conflict mandated referral to a medical panel. However, without convening a medical panel, the ALJ found that the reports of both Dr. Heiner and Dr. Gaufin lacked credibility as to the medical causation. She concluded that Willardson's back injury was preexisting and therefore dismissed his claim for benefits with prejudice for failure to establish medical causation. Specifically, the ALJ concluded that although Willardson

> experienced hip pain while re-guarding a belt on April 15, 1988 ... the preponderance of the medical evidence strongly suggests that [Willardson's] symptoms and disability after April 15, 1988 were the result of his long-standing and significant degenerative condition in his lumbar spine and were not the result of any significant contribution by the activities of April 15, 1988.

Because the ALJ dismissed the entire claim due to a lack of causation, she concluded that the conflict in the impairment evaluations was moot.

Willardson sought review, challenging the ALJ's refusal to convene a medical panel. The Commission affirmed the ALJ, and Wil-

lardson sought further review. The court of appeals rejected Willardson's argument that the Commission's rules required the ALJ to convene a medical panel, holding that "an ALJ must find credible evidence of medical causation" before a conflict in the evidence regarding the degree of the claimant's impairment requires medical-panel referral. *Willardson*, 856 P.2d at 377. Therefore, the court of appeals concluded, "Because the Commission found no credible evidence to support a finding of medical causation, any conflict [in the evidence on the degree of Willardson's impairment] is irrelevant and the rule [568–1–9(A)(1)(a) ] is inapplicable." *Id.* We granted Willardson's petition for a writ of certiorari to review the court of appeals' decision. 870 P.2d 957 (Utah 1994).

We agree with the court of appeals and the Commission that absent any credible evidence of medical causation, any conflict in the evidence as to the degree of a worker's impairment is irrelevant. However, in this case, the Commission, in determining that there was no credible evidence of medical causation, ran afoul of rule 568–1–9 that mandates the appointment of a medical panel to determine if there was medical causation.

■ Before we discuss that error, we dispose of respondents' contention that the issue of medical causation is not before us on this certiorari review. Willardson framed the issue to be reviewed in his reply brief on petition for certiorari:

> Petitioner asks this Court to review only that portion of the Court of Appeals' decision below which deals with the limited issue of the standard for referral of an industrial claim for evaluation of medical questions to a Medical Panel.

In our determination of this question, we are guided by rule 49(a)(4) of the Utah Rules of Appellate Procedure, which provides in part:

> The statement of a question presented will be deemed to comprise every subsidiary question fairly included therein. Only the questions set forth in the petition or fairly included therein will be considered by the Supreme Court.

While it is true that in the court of appeals, Willardson focused mainly on the Commis-

sion's refusal to convene a medical panel to evaluate his degree of impairment, that refusal rested upon lack of medical causation. Thus, it is clear that the issue of medical causation was subsidiary to the question of degree of impairment, and under rule 49(a)(4), medical causation is necessarily before us. In addition, Willardson framed the issue on certiorari to encompass "the standard for referral of an industrial claim for evaluation of medical questions to a Medical Panel." Causation is a medical question and is clearly included in the issue framed for review.

Turning now to the merits of Willardson's claim, medical panel referral in workers' compensation cases is governed by section 35–1–77, which provides in part:

> Upon the filing of a claim for compensation for injury by accident, or for death, arising out of and in the course of employment, and if the employer or its insurance carrier denies liability, the commission *may* refer the medical aspects of the case to a medical panel appointed by the commission.

Utah Code Ann. § 35–1–77(1)(a) (emphasis added). Although the Commission has discretion under this statute in deciding when to convene a medical panel, the Commission has adopted rule 568–1–9, which limits that discretion in certain instances. That rule provides in part:

> Pursuant to Section 35–1–77, U.C.A., the Commission adopts the following guidelines in determining the necessity of submitting a case to a medical panel:
>
> A. A panel *will* be utilized by the Administrative Law Judge where:
>
> (1) One or more significant medical issues may be involved. Generally a significant medical issue must be shown by conflicting medical reports. Significant medical issues are involved when there are:
>
> (a) Conflicting medical reports of permanent physical impairment which vary more than 5% of the whole person,
>
> (b) Conflicting medical opinions as to the temporary total cutoff date which vary more than 90 days, and/or

> (c) Medical expenses in controversy amounting to more than $2,000.

Utah Admin.Code R568–1–9 (emphasis added).

This rule requires the ALJ to submit the case to a medical panel when "one or more significant medical issues may be involved." Then the rule sets out in subsections (a), (b), and (c) three examples of when "significant medical issues" exist. A conflict in the medical reports as to medical causation is not specifically mentioned in the three examples. However, medical causation would seem to be a "significant medical issue," and when the medical reports conflict on that issue, the need for submission to a medical panel would be as necessary as in those instances specifically mentioned in subsections (a), (b), and (c). Therefore, we conclude that the three examples were not meant to be exclusive or exhaustive but only illustrative as to when a panel should be appointed.

Nevertheless, even if the three examples were intended to be exhaustive, we cannot conceive that it was intended that subsection (a) be circumvented by simply having the ALJ find that one or more of the conflicting reports is not credible. Indeed, subsection (a) contemplates that in resolving the conflict between medical reports of permanent physical impairment which vary more than five percent of the whole person, the credibility of the reports would necessarily be examined and determined by a medical panel. Allowing the ALJ, who has no medical training and possesses no medical degrees, to determine medical causation as a threshold question and dismiss both medical reports as lacking credibility effectively eviscerates the beneficence of subsection (a).

This case involves not only a significant medical issue, i.e., medical causation, but also conflicting medical reports. Willardson's claim for compensation was supported by two "Summary of Medical Record" forms submitted by two licensed and board-certified physicians, Dr. Gaufin and Dr. Heiner. Both doctors examined Willardson and indicated on these forms their conclusions that one-half of Willardson's impairment was due to preex-

isting causes and one-half was due to the April 15 accident and that there was a "medically demonstrated causal relationship between the industrial injury and [Willardson's back] problems." Respondents did not provide any medical information to rebut those conclusions. The ALJ, however, determined that the two "Summary of Medical Record" forms lacked credibility because neither Dr. Heiner nor Dr. Gaufin had access to all of Willardson's prior medical history and records. It is obvious that both physicians had some knowledge of Willardson's preexisting medical problems since they attributed half of his impairment to preexisting problems.

Respondents assail the physicians' "Summary of Medical Record" forms because the physicians did not "provide any analysis or background as to how the ratings were reached." They overlook that the one-page summaries were never intended to contain the "analysis and background" which they now contend was necessary to support Willardson's claim. Willardson was not required nor even requested to furnish any other medical information.

The ALJ relied heavily upon the records of Dr. Kotrady, who treated Willardson within hours after his accident on April 15. The ALJ interpreted Dr. Kotrady's records as indicating that he "is clearly of the opinion that the applicant's problems were pre-existing" and treated his records as a third medical report. Even assuming this interpretation to be correct,[1] there was clearly presented the very situation contemplated by the Commission's rule requiring the appointment of a medical panel, namely, a conflict in the three medical reports. Willardson cannot be deprived of the benefit of that rule by the ALJ's taking it upon herself to disregard two of the reports because their authors did not provide supporting information that they were not requested to provide. It is the medical panel's report that is intended to be detailed and well-supported and to contain the "analysis and background" insisted upon by respondents.

We have heretofore recognized, independent of any rule of the Commission, that "where the evidence of a causal connection between the work-related event and the injury is uncertain or highly technical, failure to refer the case to a medical panel may be an abuse of discretion." *Champion Home Builders v. Industrial Comm'n,* 703 P.2d 306, 308 (Utah 1985); *accord Hone v. J.F. Shea Co.,* 728 P.2d 1008, 1012 (Utah 1986). We find an abuse of discretion here.

We conclude that the Industrial Commission violated its own rule and abused its discretion and that its violation substantially prejudiced Willardson. Therefore, under section 63–46b–16(4)(h)(ii) of the Utah Administrative Procedures Act, we overturn the Commission's decision and reverse the court of appeals' decision. The case is remanded to the Industrial Commission for further proceedings consistent with this opinion.

. . . . .

STEWART, Associate C.J., DURHAM, and RUSSON, JJ., concur in HOWE, J., opinion.

ZIMMERMAN, Chief Justice, dissenting:

In concluding that the ALJ violated rule 568–1–9 in refusing to convene a medical panel, the majority disregards the general rule that "[i]ssues not raised before the administrative agency are waived on appeal." *Gibson v. Board of Review of Indus. Comm'n,* 707 P.2d 675, 677 (Utah 1985) (per curiam); *accord Pease v. Industrial Comm'n,* 694 P.2d 613, 616 (Utah 1984). Although Willardson did ask the ALJ to convene a medical panel, he did so on the sole ground that because he presented "[c]onflicting medical reports of permanent physical impairment which vary more than 5% of the whole person," medical-panel referral was mandatory under rule 568–1–9(A)(1)(a). Willardson did not ask the Commission to interpret that rule as requiring medical-panel referral whenever medical reports conflict as to medical causation, and accordingly, the Commission did not address the issue. In light of our well-established precedent precluding

---

1. We note that Dr. Kotrady responded to the question "Is the condition requiring treatment the result of the industrial injury or exposure described?" by checking *both* the "yes" and "no" boxes.

our consideration of issues not raised below, I would not reach this issue.

An additional reason for not reaching the question of whether the ALJ violated rule 568–1–9 is that we normally defer to an agency's reasonable interpretation of its own rules, *Union Pac. R.R. v. Tax Comm'n,* 842 P.2d 876, 879 (Utah 1992), and here, the Commission has not been given the opportunity to interpret rule 568–1–9. The Commission might reasonably have concluded that medical causation, at least where supported by such weak and perfunctory evidence as is present here, is not always a significant medical issue that requires an ALJ to convene a medical panel. Indeed, it seems unlikely that the Commission would conclude that its rule requires medical-panel referral any time a question is raised about medical causation. Such an interpretation would largely eviscerate the 1982 amendment to section 35–1–77, under which rule 568–1–9 was promulgated and which made medical-panel referral discretionary rather than mandatory as it was prior to the amendment. *Compare* Utah Code Ann. § 35–1–77 (1981) *with* Utah Code Ann. § 35–1–77 (1994).

If I were to reach the substance of the majority's ruling, I would find that the rule does not limit the discretion conferred on the ALJ by section 35–1–77 as to whether to convene a panel under the circumstances presented here and I would find that the ALJ did not abuse her discretion. While it is true that "where the evidence of causal connection between the work-related event and the injury is uncertain or highly technical, failure to refer the case to a medical panel may be an abuse of discretion," *Champion Home Builders v. Industrial Comm'n,* 703 P.2d 306, 308 (Utah 1985), there is no abuse of discretion on the facts of this case.

In *Champion Home Builders,* the Commission awarded the claimant medical expenses and temporary total disability benefits after he suffered a perforated duodenal ulcer, allegedly while lifting a heavy beam at work. *Id.* at 306. The only expert testimony before the Commission relating to the issue of medical causation was that of the doctor who first examined the claimant following his injury. This doctor testified that he "knew

of no medical data which cites lifting as a cause of ulcer perforation, [but that] he was aware that lifting causes an increase in stomach pressure, and that ulcers perforate more often when there is an increase in stomach pressure." *Id.* at 307. On these facts, this court held that the Commission did not abuse its discretion in refusing to convene a medical panel. *Id.* at 308. Because I cannot see how the evidence of medical causation in the instant case was more uncertain or technical than that in *Champion Home Builders,* I would hold that the ALJ did not abuse her discretion in refusing to convene a medical panel.

I now comment on the merits of the issue Willardson properly raised on appeal, as opposed to the issue he did not preserve below but which is addressed by the majority. Willardson argues that rule 568–1–9(A)(1)(a) requires medical-panel referral whenever a claimant presents conflicting medical reports as to the level of the claimant's permanent physical impairment. Willardson argues that because he presented such conflicting reports—Dr. Heiner rated Willardson as thirty percent impaired, while Dr. Gaufin rated him as fifteen percent impaired—the ALJ violated rule 568–1–9(A)(1)(a) in refusing to convene a medical panel. Although the majority does not reach this issue, the court of appeals did. I would affirm the court of appeals.

Because a claimant must establish medical causation to recover under Utah's workers' compensation scheme, *Allen v. Industrial Comm'n,* 729 P.2d 15, 22–27 (Utah 1986), a discrepancy in reports of physical impairment is immaterial to the outcome of the proceeding until medical causation is shown. Willardson's claim was dismissed because the ALJ found no credible evidence of medical causation; the conflict in Willardson's impairment ratings was irrelevant to that decision. Therefore, the real issue in this case is not the degree of Willardson's impairment, but whether Willardson's accident caused that impairment. It is illogical to read rule 568–1–9(A)(1)(a), as Willardson contends, to require the futile act of referral to a panel of the logically secondary issue of the degree of Willardson's impairment when Willardson could not have recovered under any circum-

stances without first proving medical causation.

Moreover, nothing in rule 568–1–9(A)(1)(a) suggests that an ALJ must refer the logically prior issue of medical causation to a medical panel simply because there happens to be a conflict in the evidence concerning the claimant's impairment rating. As the court of appeals noted, medical causation is the "critical threshold issue which precedes the requirement of review by a medical panel" under rule 568–1–9(A)(1)(a). *Willardson v. Industrial Comm'n,* 856 P.2d 371, 377 (Ct. App.1993), *cert. granted,* 870 P.2d 957 (Utah 1994). Because the ALJ found no "credible evidence of medical causation" and because Willardson does not challenge that finding,[1] I do not think the ALJ violated rule 568–1–9(A)(1)(a) in refusing to convene a medical panel.

For the foregoing reasons, I would affirm the decision of the court of appeals upholding the Commission's dismissal of Willardson's claim.

1. The majority erroneously concludes that Willardson's challenge to the ALJ's factual finding is fairly included in the question presented for certiorari review. As the majority recognizes, Willardson appealed "only that portion of the court of appeals' decision below which deals with the limited issue of the *standard for referral . . . to a medical panel."* (Emphasis added.) This issue embodies a purely legal question and cannot reasonably be said to include Willardson's challenge to the ALJ's factual finding. Because we consider "[o]nly the questions set forth in the petition or fairly included therein," Utah R.App.P. 49(a)(4), I would hold that Willardson has not appealed the ALJ's factual finding.