**2013 UT App 51**

# THE UTAH COURT OF APPEALS

TOMMY MIGLIACCIO,

*Petitioner,*

*v.*

LABOR COMMISSION AND SALT LAKE COUNTY,

*Respondents.*

Memorandum Decision
No. 20110690-CA
Filed February 28, 2013

Original Proceeding in this Court

Richard R. Burke, Attorney for Petitioner

Thomas C. Sturdy and Dori K. Petersen, Attorneys for
Respondent Salt Lake County

Alan L. Hennebold, Attorney for Respondent Labor Commission

JUDGE JAMES Z. DAVIS authored this Memorandum Decision,
in which JUDGES CAROLYN B. MCHUGH
and MICHELE M. CHRISTIANSEN concurred.

DAVIS, Judge:

¶1    Tommy Migliaccio seeks judicial review of the Utah Labor
Commission's decision to deny his request for workers'
compensation benefits for a cervical-spine injury that he asserts

was caused or aggravated by an industrial accident that occurred in September 2006.[1] We do not disturb the Commission's decision.

¶2    Migliaccio asserts that the issue of medical causation was not disputed and that as a result, the administrative law judge (ALJ) abused her discretion when she referred the case to a medical panel after the conclusion of the hearing. Likewise, Migliaccio contends that he was entitled to a judgment in his favor as a matter of law because Salt Lake County (the County) failed to adequately dispute the issue of medical causation and further argues that the Commission's findings in accordance with the medical panel's recommendation[2] were not supported by substantial evidence.

¶3    The Utah Code gives an ALJ the discretion to convene a medical panel when reviewing workers' compensation cases. *See* Utah Code Ann. § 34A-2-601(1)(6) (LexisNexis 2011) ("An administrative law judge may appoint a medical panel upon the filing of a claim for compensation based upon disability or death

---

1. It is unclear on what specific day the accident occurred. Migliaccio's appellate brief states September 16, Salt Lake County's appellate brief and the ALJ's findings indicate that the accident was on September 19, a letter from one of the doctors that treated Migliaccio puts it at September 18, and Migliaccio's testimony at the administrative hearing was that it occurred on September 14.

2. Two medical panels were convened in this case. Migliaccio successfully moved to reconstitute the first medical panel, although at that time the panel had already filed a medical report, concluding that his neck injuries were not related to the industrial accident. A second medical panel was convened, and its medical report, which reached the same conclusion, was admitted into evidence and ultimately relied on by the ALJ and the Commission. It does not appear that the first medical panel's report was admitted into evidence.

due to an occupational disease.").[3] However, the Utah Administrative Code *requires* an ALJ to utilize a medical panel "where one or more significant medical issues may be involved" and notes that such a circumstance "[g]enerally [involves] . . . conflicting medical reports." *See* Utah Admin. Code R602-2-2.A. Particularly, conflicting reports regarding medical causation of an employee's injuries constitute a "significant medical issue," requiring the involvement of a medical panel. *See Willardson v. Industrial Comm'n*, 904 P.2d 671, 674 (Utah 1995) (internal quotation marks omitted). Accordingly, "where the evidence of a causal connection between the work-related event and the injury is uncertain or highly technical, failure to refer the case to a medical panel may be an abuse of discretion." *Id.* at 675 (citation and internal quotation marks omitted).

¶4 Here, the ALJ concluded that "[a]lthough [rule] 602-2-2[.A] provides specific instances in which a claim *must* be referred to a medical panel, the statute does not preclude claims from being referred to medical panels for other medical questions." (Emphasis added.) We agree. In any event, not only did the ALJ have discretion in this case, but the ambiguities regarding causation that were apparent in the medical records submitted by Migliaccio support the involvement of a medical panel. *See* Utah Admin. Code R602-2-2.A; *Willardson*, 904 P.2d at 674.

¶5 Migliaccio's evidence indicated that he did not complain of neck pain until May 21, 2007, seven months after his work accident. The Commission and ALJ found this delay to be an important factor in determining causation. Initially, Migliaccio's complaints were reported by various physicians to be part of an ongoing affliction that began somewhere between one and a half years and

---

3. Because amendments to the relevant sections of the Utah Code subsequent to the events underlying this action do not affect our analysis, we cite the most recent version of the Code for the reader's convenience.

two months before the accident, and several physicians noted that Migliaccio specifically denied that his pain was attributable to a particular work accident and denied that he had any issues with his neck, with one physician actually confirming that Migliaccio's neck was healthy after conducting tests on it.[4] Several days after the accident occurred, *see supra* note 1, a physical therapist noted that Migliaccio considered his medical issues to constitute a "work injury." Further, another physician evaluating Migliaccio on February 2, 2007, reported that Migliaccio described his pain as handicapping, to the extent that he could hardly lift a shovel, much less do any work with one. The physician wrote that Migliaccio stated that he essentially "could not use his arms due to pain and that he couldn't even pick his nose." However, this physician also noted that despite Migliaccio's description of his pain, surveillance videos recorded in November 2006 by a private investigator

---

4. This is contrary to Migliaccio's assertions that causation was not disputed because his neck was not examined until seven months after the work accident, and even then his neck was examined by only one doctor, Dr. Michael Giovanniello. Dr. Giovanniello believed Migliaccio's neck pain was connected to the work accident. Migliaccio is correct that only Dr. Giovanniello specifically examined whether there was a causal link between Migliaccio's neck pain and the work accident. However, that Migliaccio reported no neck pain to the physicians treating him earlier in this process—only symptoms that in hindsight could be considered manifestations of his neck injury—and that one physician did, in fact, rule out a neck injury after evaluating Migliaccio's neck, disputes Migliaccio's causation claim by suggesting that the neck injury was unrelated. The ALJ's and the Commission's conclusions that the neck injury was unrelated to the accident reflects their decisions to place more weight on the credibility of the evidence suggesting that the two were not linked, rather than Migliaccio's implication that the neck injury was merely latent or misinterpreted for several months. *See infra* ¶¶ 8–10.

showed Migliaccio in little to no apparent discomfort while shoveling dirt, digging, using a shovel to strike the ground with significant force, carrying objects from his truck to his house, swinging a long plank of wood, opening and closing doors and the tailgate of his truck, and swinging his arms while driving a four-wheeler.

¶6     These inconsistencies alone—not including the other inconsistencies referenced by the County at the hearing and in its appellate brief, as well as those noted by the ALJ in her decision to convene a medical panel—indicate that medical causation and the extent of Migliaccio's disability were unclear. The confusion as to what date the work accident occurred and Migliaccio's initial denial that his injuries were attributable to a specific work accident undermines his assertion that an accident even occurred. Further, the County disputed medical causation in its response to Migliaccio's Application For Hearing and again in its prehearing disclosures, where the County explained that it planned to present testimony from a private investigator and the aforementioned surveillance video recorded by the investigator, and to otherwise rely on the medical records to litigate its defenses of "[l]ack of medical or legal causation," "[p]re-existing condition," "[l]ack of competent evidence to suggest permanent total disability," and that "[a]ny continuing problems are an industrial disease qualifying for apportionment." In addition to presenting the surveillance video evidence and the private investigator's testimony at the hearing, the County also disputed causation through its cross-examinations of Migliaccio, the County's claims adjuster, and Migliaccio's supervisor. That the County relied on the inconsistencies in Migliaccio's medical evidence, rather than submitting its own causation evidence—which would presumably be duplicative of many of the medical records already submitted by Migliaccio—is of little consequence under the facts and circumstances of this case.[5] *Cf. Willardson*, 904 P.2d at 675 (*requiring*

5. Migliaccio's argument that Utah Administrative Code rules 602-
(continued...)

the ALJ to refer the case to a medical panel where the petitioner's evidence contained conflicting conclusions regarding medical causation, despite the fact that the "[r]espondents did not provide any medical information to rebut" the petitioners' medical reports). Thus, the ALJ rightly referred the issue to a medical panel for assistance.[6]

---

5. (...continued)
2-1.A.4 and 602-2-1.B.3 require a ruling in his favor in light of the County's failure to supply its own medical reports, is unavailing. Indeed, the plain language of rule 602-2-2.1.B.3 indicates that it applies specifically to "Applications for Hearing," not responses to those applications. *See generally* Utah Admin. Code R602-2-1.A.4, R602-2-1.B.3. Here, Migliaccio applied for a hearing, not the County. And even where the administrative rules explain that a respondent's denial of liability based on "medical issues" "shall" be accompanied by "copies of medical reports sufficient to support the denial," the rules do not mandate that failure to do so essentially results in a judgment on the pleadings in the petitioner's favor, as Migliaccio asserts. *See id.* R602-2-1.C.4; *id.* R602-2-1.C.5 ("If the answer filed by the respondents fails to sufficiently explain the basis of the denial[ or] fails to include medical reports or records to support the denial . . . , the Division *may* strike the answer filed and order the respondent to file within 20 days, a new answer which conforms with the requirements of this rule."). Further, it is simply illogical to interpret the administrative rules to require, in this case, that the County resubmit the medical records Migliaccio already submitted, rather than simply reference its reliance on those records in its response.

6. Implicit in our ruling on this issue is our disagreement with Migliaccio's assertion that once he satisfied his burden of production as to causation, the burden shifted to the employer to affirmatively produce evidence disputing causation, which burden Migliaccio asserts the County did not satisfy because it did not present separate medical evidence. As this court has stated, (continued...)

¶7     Last, Migliaccio asserts that the Commission's findings were not supported by substantial evidence.[7] "We must uphold the Commission's factual findings if such findings are supported by substantial evidence based upon the record as a whole." *Brown & Root Indus. Serv. v. Industrial Comm'n*, 947 P.2d 671, 677 (Utah 1997).

---

6. (...continued)

medical "causation is [not] an affirmative defense. Generally, a defense that merely controverts [a] plaintiff's prima facie case is negative in character." *Blair v. Labor Comm'n*, 2011 UT App 248, ¶ 10, 262 P.3d 456 (citation and internal quotation marks omitted). Further, "[w]hether a party has satisfied its burden of production . . . is an issue of law[ that] arises when, after a party rests, an opposing counsel brings a motion for a directed verdict or the like." *See* 29 Am. Jur. 2d Evidence § 171 (2008). In other words, it is not based on a party's responsive pleading, as Migliaccio argues, absent any sort of "preemptory ruling such as a summary judgment." *See Black's Law Dictionary* 223 (9th ed. 2009) (defining "burden of production" as "[a] party's duty to introduce enough evidence on an issue to have the issue decided by the fact-finder, rather than decided against the party in a preemptory ruling such as a summary judgment or a directed verdict"). Accordingly, we do not address Migliaccio's subsidiary arguments that the County did not properly raise the issue of medical causation, that the County waived the defense of causation, and that *Allen v. Industrial Commission*, 729 P.2d 15 (Utah 1986), mandates a ruling in Migliaccio's favor.

7. Migliaccio also "asserts that the Commission had no discretion to ignore the undisputed medical causal evidence," that the Commission impermissibly adjudicated the issue of causation where that issue was not adequately disputed by the County, that the County failed to satisfy its burden of production on causation, and that the Commission wrongly waived the County's burden of production. Because we have determined that the County adequately disputed medical causation, *see supra* ¶ 6, we need not address these claims.

"It is not the role of this court to reweigh the evidence and substitute our conclusion for that of the Commission. Instead, we defer to the Commission's findings because, when reasonably conflicting views arise, it is the Commission's province to draw inferences and resolve these conflicts." *Speirs v. Southern Utah Univ.*, 2002 UT App 389, ¶ 13, 60 P.3d 42 (citations and internal quotation marks omitted).

¶8    Migliaccio specifically challenges the Commission's finding that Dr. Michael Giovanniello first concluded that Migliaccio's cervical-spine issue was unrelated to his work accident, only to change his mind later. Migliaccio also argues that the finding relied on by the Commission that none of the physicians who treated Migliaccio immediately after the work accident noted any complaints of neck pain or injury is irrelevant because these physicians were evaluating his upper extremities exclusively. He asserts that this finding by the Commission is based on the Commission's assumption that Migliaccio's neck pain should have been apparent immediately after the accident. According to Migliaccio, the limited nature of these physicians' examinations neither confirms nor disproves that Migliaccio's cervical spine was injured by the work accident. We disagree with these contentions.

¶9    Although it does appear that the Commission wrongly described Dr. Giovanniello as having first opined that "Migliaccio's cervical-spine condition was not related to the work accident only to eventually change his opinion," that single inconsistency does not render the Commission's determination invalid. The medical panel's report concludes that Migliaccio's injuries were not caused by his industrial accident and is sufficient, on its own, to support the Commission's decision. *Cf. Cunningham v. Labor Comm'n*, 2004 UT App 276U, para. 4 (mem.) ("Each of the findings that [the petitioner] challenges is supported . . . by the medical panel's report, which in this case would satisfy our requirement that findings be supported by substantial evidence . . . ."). Further, Migliaccio has not challenged the substance of the medical panel's report on appeal—his appellate briefs do not address the panel's

findings; rather his briefs merely reiterate his assertion that causation was not ambiguous.[8]

¶10    Nonetheless, even putting aside the unchallenged merits of the medical panel's report, we believe it is relevant to the determination of causation that various physicians' reports documenting Migliaccio's complaints for seven months after the accident are either devoid of any mention of neck pain or affirmatively note Migliaccio's denial of neck pain, with at least one medical evaluation confirming that Migliaccio's neck was healthy. Contrary to Migliaccio's assertion that these findings are based on an assumption about what symptoms Migliaccio should have experienced and when, the lack of any complaint of neck pain for seven months also raises the question of whether the neck pain was related to the accident at all. That Dr. Giovanniello's reports were not consistent with the earlier medical reports does not undermine the Commission's decision; rather, it reflects the Commission's decision to resolve the conflicts in the evidence against Migliaccio. *See Speirs*, 2002 UT App 389, ¶ 13. Accordingly, we determine that

---

8. Contrary to Migliaccio's assertion that the Commission failed to explain how it reached its conclusion, the Commission's order affirming the ALJ's decision stated, "The [medical] panel's conclusion that Mr. Migliaccio's cervical-spine problems were not medically caused by the accident is persuasive because the panel's report is thorough, well-reasoned and based on a collegial and impartial review of the medical evidence in the record." Migliaccio's failure to address the medical panel's findings at all is arguably grounds to dismiss this claim for failure to marshal the evidence. *See generally Whitear v. Labor Comm'n*, 973 P.2d 982, 984 (Utah Ct. App. 1998) ("A party seeking to overturn the Commission's factual findings must marshal[] . . . all of the evidence supporting the findings and show that despite the supporting facts, and in light of the conflicting or contradictory evidence, the findings are not supported by substantial evidence." (emphasis, citation, and internal quotation marks omitted)).

the Commission had substantial evidence on which it could base its dismissal of Migliaccio's claim for lack of medical causation.

¶11    In sum, the ALJ had the discretion, and perhaps even the obligation, to refer Migliaccio's case to a medical panel. The County adequately raised and disputed the issue of medical causation, and the Commission's decision to dismiss Migliaccio's complaint is based on substantial evidence indicating that Migliaccio's cervical-spine issues were unrelated to his work accident. We therefore do not disturb the Commission's decision.

————————