**2015 UT App 62**

# THE UTAH COURT OF APPEALS

EVOLOCITY, INC.,
Petitioner,
*v.*
DEPARTMENT OF WORKFORCE SERVICES
AND DEABRA C. COLBERT,
Respondents.

Memorandum Decision
No. 20130025-CA
Filed March 19, 2015

Original Proceeding in this Court

Vincent C. Rampton, Attorney for Petitioner

Amanda B. McPeck, Attorney for Respondent
Department of Workforce Services

David J. Holdsworth, Attorney for Respondent
Deabra C. Colbert

JUDGE MICHELE M. CHRISTIANSEN authored this Memorandum
Decision, in which SENIOR JUDGES RUSSELL W. BENCH and JUDITH
M. BILLINGS concurred.[1]

CHRISTIANSEN, Judge:

¶1     Evolocity, Inc. seeks judicial review of the Department of
Workforce Services' determination that Deabra C. Colbert was
discharged   without   just   cause   and   therefore   entitled   to

---

1. The Honorable Russell W. Bench and the Honorable Judith M.
Billings, Senior Judges, sat by special assignment as authorized by
law. *See generally* Utah R. Jud. Admin. 11-201(6).

unemployment benefits. We decline to disturb the Department's decision.

¶2      In reviewing an agency's adjudicative decision, we view the facts in the light most favorable to the agency's findings. *See Swift Transp. v. Labor Comm'n*, 2014 UT App 104, ¶ 2 n.1, 326 P.3d 678. Evolocity employed Colbert to perform training and consulting for approximately four years, from August 2008 to July 2, 2012.[2] On July 2, 2012, Evolocity sent an email to Colbert terminating her employment:

> Due [to] an exodus of clients since the first of the year—along with a substantial decrease in new clients during this same time, [Evolocity] is faced with making some difficult choices going forward.
>
> One of these choices is that we feel it necessary at this time to cut the amount we pay each month for IC retainers.[3]
>
> As such, we regret to inform you that we need to suspend services from you at this time.
>
> However, due [to] your service and level of commitment, we would be interested in retaining you again in the future should we be able to bring on

---

2. The nature of Colbert's employment with Evolocity is discussed in more detail in a related appeal, in which this court declined to disturb the Department's determination that Colbert was Evolocity's employee rather than an independent contractor. *See generally Evolocity v. Department of Workforce Servs.*, 2015 UT App 61.

3. Evolocity characterizes its workers as independent contractors. An "IC retainer" is a set biweekly salary that each worker is paid according to his or her employment contract. *See Evolocity v. Department of Workforce Servs.* 2015 UT App 61, ¶ 3.

enough new clients and retain clients going forward so as to have the revenue needed to re-retain your services.

We'd also like to offer you 2-weeks worth of regular payout to retain you/your time over these two weeks.

During this two week period we'd like to pay you for consulting and training other IC team, completing projects in queue and otherwise fulfilling as previously expected.

Again, we regret having to make this decision, and know that you must also know and understand that as a company we simply do not have the clientele base at present to sustain ongoing full IC retainers as we have done . . . .

Be assured that, should you want to continue working with [E]volocity in the future and should [E]volocity be able to regain [its] needed revenue flow—we would strongly consider re-engaging your services.

Evolocity's email to Colbert made no mention of Colbert's performance or any dissatisfaction with her work. Colbert performed some work for Evolocity over the next few days but was locked out of Evolocity's system on July 5, 2012.

¶3     Colbert applied to the Department for unemployment benefits. Evolocity opposed her application, arguing that Colbert either quit or was discharged for just cause. An administrative law judge held a hearing on the matter over the course of several days. The administrative law judge ultimately concluded that Colbert had been discharged without just cause and was therefore entitled to unemployment benefits. Evolocity appealed to the Department's

appeals board, which affirmed the administrative law judge's decision. Evolocity now seeks judicial review of the Department's decision.

¶4     Evolocity first challenges the Department's determination that Colbert did not voluntarily quit but was discharged by Evolocity. "Under rules governing the Department of Workforce Services, a separation is considered voluntary if the claimant was the 'moving party in ending the employment relationship.'" *Davis v. Department of Workforce Servs.*, 2012 UT App 158, ¶ 3, 280 P.3d 442 (quoting Utah Admin. Code R994-405-101(1)). "'A separation is a discharge,' however, 'if the employer was the moving party in determining the date the employment ended.'" *Id.* (quoting Utah Admin. Code R994-405-201). The Department's finding that Colbert was discharged is a "fact-like" determination, and we grant deference to the Department's decision as a matter of institutional competence. *See Hansen v. Department of Workforce Servs.*, 2014 UT App 231, ¶ 8, 336 P.3d 1087. Accordingly, we will not reweigh the evidence and substitute our conclusion for that of the Department. *Migliaccio v. Labor Comm'n*, 2013 UT App 51, ¶ 7, 298 P.3d 676. Instead, we will "uphold the [Department's] determination if it is supported by substantial evidence." *Hansen*, 2014 UT App 231, ¶ 8. "Substantial evidence is more than a mere scintilla of evidence . . . though something less than the weight of the evidence." *Cook v. Labor Comm'n*, 2013 UT App 286, ¶ 14, 317 P.3d 464 (omission in original) (citation and internal quotation marks omitted).

¶5     Here, the Department determined that Evolocity was the moving party in terminating the employment relationship because Evolocity issued a notice of termination on July 2, "[t]he plain language of the termination notice clearly shows [Evolocity's] intent to terminate [Colbert]," and Evolocity terminated Colbert three days later. "If a separation decision has been made, it is generally demonstrated by giving notice to the claimant." Utah Admin. Code R994-405-206(1). The July 2 termination notice alone provides a sufficient evidentiary basis for the Department's determination that Evolocity was the moving party in terminating

Colbert. However, other evidence from the hearing also supports the Department's decision, including testimony from Evolocity's "Independent Contractor Consultant," who had prepared the termination notice on behalf of Evolocity. While the consultant testified that Evolocity had intended to terminate Colbert only if she did not improve her performance, he conceded that the notice could be interpreted as terminating Colbert's employment at that time. The Department's determination is therefore supported by substantial evidence. *Hansen*, 2014 UT App 231, ¶ 8.

¶6      Evolocity argues that Colbert's separation was nevertheless a quit because Colbert "walked away from her contractual relationship with Evolocity two weeks before it was scheduled to be concluded." If a claimant leaves work in anticipation of a discharge that would not disqualify the claimant from benefits, that separation is a quit. Utah Admin. Code R994-405-204(2). Evolocity claims that the Department "disregarded evidence" that established Colbert was expected to work for Evolocity for an additional two weeks and that Colbert left work before that two-week period ended.

¶7      "It is the province of the [Department], not appellate courts, to resolve conflicting evidence, and where inconsistent inferences can be drawn from the same evidence, it is for the [Department] to draw the inferences." *Davis*, 2012 UT App 158, ¶ 6 (citation and internal quotation marks omitted). The Department found that Colbert "did not refuse available work and did not leave employment." Both Colbert and another Evolocity worker testified at the hearing that Colbert continued to perform work for Evolocity up until July 5 and possibly beyond that date.[4] Thus, there is

---

4. Throughout its brief, Evolocity asserts that much of Colbert's testimony was disproven, shown to be false, or shown to be perjured. However, the Department apparently found Colbert credible, and Evolocity has directed us to no finding that Colbert

(continued...)

evidence in the record to support the Department's determination that Colbert did not leave her employment before she was discharged on July 5. Accordingly, "we defer to the [Department's] assessment of credibility and resolution of [the] conflicting evidence." *Id.* We therefore decline to disturb the Department's decision that Colbert did not voluntarily quit but was discharged by Evolocity.[5]

¶8      Evolocity next challenges the Department's determination that Colbert's discharge was not for "just cause." Unemployment benefits will be denied if the claimant was discharged for just cause. Utah Admin. Code R994-405-201. "A just cause discharge must include some fault on the part of the claimant," *id.*, and the employer bears the burden to prove there was just cause for discharging the claimant, *id.* R994-405-203. To establish just cause for a discharge, the employer must prove three elements: culpability, knowledge, and control. *Id.* R994-405-202. The employer's failure to establish any of the elements will result in a

---

4. (...continued)
perjured herself. Thus, because "it is not this court's role to judge the relative credibility of witnesses," we defer to the Department's assessment of Colbert's credibility and truthfulness. *See Uintah County v. Department of Workforce Servs.*, 2014 UT App 44, ¶ 4, 320 P.3d 1103 (citation and internal quotation marks omitted).

5. Evolocity argues that the Department improperly relied on the termination notice in making its determination because rule R994-405-204 of the Utah Administrative Code provides that "[t]he conclusions on the employer's records, the separation notice, or the claimant's report are not controlling." (Emphasis omitted.) However, this regulation merely provides that the Department is not bound by the reasons expressed in the separation notice; it does not preclude the Department from considering the separation notice and affording it whatever evidentiary weight the Department deems appropriate.

determination that the employee was discharged without just cause. *Id.*

¶9      To demonstrate culpability, the employer must show that the claimant was discharged for conduct "so serious that continuing the employment relationship would jeopardize the employer's rightful interest." *Id.* R994-405-202(1). The Department concluded that, while Evolocity "had concerns about [Colbert's] job performance on certain assignments, it failed to show [Colbert's] performance was consistently poor such that it justified the decision to discharge her." In support of this conclusion, the Department observed that the termination notice makes no mention of Colbert's job performance and expressly states that as a result of Colbert's "service and level of commitment," she would be welcomed back to work if Evolocity had sufficient clients in the future. The Department also noted that if Colbert's performance was so poor as to necessitate a discharge, it would not make sense for Evolocity to offer Colbert the opportunity to work an additional two weeks. Again, the termination notice alone is sufficient evidence to support the Department's determination on this point.

¶10      Evolocity asserts that the Department's decision is erroneous because the evidence shows a "litany of severe performance deficienc[ies]" on Colbert's part and that these "ongoing, repeated performance deficiencies, dating back to the autumn of 2011, created ongoing troubles for Evolocity." However, the relevant "cause for discharge is the conduct that motivated the employer to make the decision to discharge the claimant." *Id.* R994-405-206(1). "If a separation decision has been made, it is generally demonstrated by giving notice to the claimant." *Id.* "If the discharge did not occur immediately after the employer became aware of an offense, a presumption arises that there were other reasons for the discharge." *Id.* R994-405-206(2). The Department concluded that "[t]he termination notice is the best indication of [Evolocity's] intentions at the time of the discharge." Thus, the Department determined that at the time of Colbert's discharge, Evolocity had chosen to discharge her for "an inability to pay for

her services any longer" and not as a result of her job performance. While the Department recognized that Evolocity "had grown dissatisfied with [Colbert's] job performance," it observed that any performance deficiencies on Colbert's part had been "ongoing and left unchecked" and therefore could not be "so serious as to require immediate separation." Thus, any evidence that Colbert may have performed poorly in the past does not undermine the Department's determination that Colbert was not discharged for conduct that required her immediate separation.

¶11    The record evidence supports the Department's determination that Evolocity failed to establish Colbert's culpability for her discharge. Accordingly, we need not consider whether Evolocity demonstrated Colbert's knowledge of or control over the circumstances of her discharge. *Id.* R994-405-202. We therefore decline to disturb the Department's determination that Colbert was discharged without just cause.

¶12    Last, Evolocity argues that the administrative law judge improperly limited the scope of testimony at the hearing to only the issue of whether Colbert quit or was discharged and did not allow testimony regarding whether any discharge was justified. As a result, Evolocity asserts that it was "deprived of the opportunity to present live testimony from other independent contractors who had interacted with Ms. Colbert, and could explain the written record and speak to both her performance deficiencies and their impact on Evolocity's business operations." Evolocity claims that the exclusion of this testimony deprived Evolocity of a full and fair hearing in violation of both its statutory and constitutional rights.

¶13    Even if we assume that the administrative law judge improperly limited Evolocity's witnesses from testifying as to the "just cause" issue, Evolocity has failed to demonstrate that it was prejudiced by this error. Under the Administrative Procedures Act, "an appellate court may reverse an agency's decision 'only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced'" by the agency's

erroneous decision. *Smith v. Department of Workforce Servs.*, 2010 UT App 382, ¶ 16, 245 P.3d 758 (quoting Utah Code Ann. § 63G-4-403(4)(e) (LexisNexis 2008)). Thus, an error will be deemed harmless unless there is a reasonable likelihood that the outcome of the proceedings would have been different absent the error. *See id.* ¶¶ 16–18. The burden of establishing prejudice belongs to the party challenging the agency's decision. *Id.* ¶ 17.

¶14 Here, Evolocity concedes that the Department had "a significant written record" detailing Colbert's performance and the circumstances of her discharge. However, Evolocity asserts that additional live testimony would have "bolstered the written record." Yet Evolocity does not explain how the outcome of the hearing would have been different if Evolocity had presented the testimony it claims was improperly excluded. Particularly where the Department relied in large part on the termination notice and the testimony of the author of that notice in making its determination, it is entirely unclear how the testimony of independent contractors who had no role in Colbert's discharge would have made any difference to the Department's decision. We therefore conclude that Evolocity has failed to meet its appellate burden on this point. Because Evolocity has not shown that it was substantially prejudiced by the manner in which the administrative law judge conducted the hearing, we conclude that any error committed by the administrative law judge was harmless. *Id.* ¶ 16.

¶15 We decline to disturb the Department's decision.

———————