**BROWN & ROOT INDUSTRIAL SERVICE and Highland Insurance, Respondents,**

v.

**INDUSTRIAL COMMISSION OF UTAH and David Wardrop, Petitioners.**

Nos. 960083, 960084.

Supreme Court of Utah.

Oct. 14, 1997.

Julianne Blanch, Stuart L. Poelman, Dori K. Petersen, Salt Lake City, for respondents.

Alan Hennebold, Salt Lake City, for the Commission.

G. Scott Jensen, Ogden, for Wardrop.

## ON CERTIORARI TO THE UTAH COURT OF APPEALS

HOWE, Justice:

We granted certiorari to review a decision of the court of appeals that a 1988 amendment to Utah Code Ann. § 35–1–99 applies retroactively to bar David Wardrop's claim for medical expenses and that he was not entitled to temporary total disability compensation for an injury which he sustained in 1992 but which arose out of an earlier covered injury. *Brown & Root Indus. Serv. v. Industrial Comm'n,* 905 P.2d 305 (Ct.App. 1995), *cert. granted,* 917 P.2d 556 (Utah 1996).

## BACKGROUND

On April 23, 1987, while working for Brown & Root Industrial Service, Wardrop injured his right knee when he fell back while climbing a rope out of a ten-foot sump hole and struck his right leg on an upturned five-gallon bucket. Brown & Root Industrial was insured through Highland Insurance (collectively, "Brown & Root").

Wardrop was initially diagnosed with a knee strain. However, he continued to experience pain and over the next year saw four different doctors whose diagnoses regarding the severity of his injury differed. One of the doctors Wardrop consulted was Dr. C. Gabbert, an orthopedic surgeon, who reported that Wardrop's knee had "locked" on three or four different occasions, making it necessary to massage the knee to straighten it out. He also noted that Wardrop complained of feeling unstable on the knee. Dr. Gabbert diagnosed a probable torn meniscus and recommended arthroscopic surgery, which he performed. However, he indicated that he could not locate any tears in the medial meniscus and that the anterior cruciate ligament appeared normal. Wardrop received temporary total disability compensation from Brown & Root during his two-week recovery after the surgery.

Brown & Root paid all of Wardrop's medical expenses for the injury, with the exception of one unauthorized doctor visit. The last claim was paid in 1988. On January 27, 1992, Wardrop's knee locked while he was getting out of his car, causing him to slip and fall on ice in his inclined driveway. He testified that the knee instability he had experienced since the industrial accident in 1987 contributed to the fall. Wardrop saw Dr. D. Mayer for this injury on March 4, 1992. Dr. Mayer concluded that Wardrop suffered from an anterior cruciate ligament injury, and recommended reconstructive surgery.

Wardrop was next examined by Dr. G. Zeluff, an orthopedist, at Brown & Root's request. After reviewing Wardrop's entire medical history, Dr. Zeluff diagnosed an anterior cruciate insufficiency with some continuing damage to the medial meniscus. He noted the strong possibility that a partial tear to the anterior cruciate ligament result-

ing from the original injury had been aggravated and completed by additional twisting, especially by the fall on the ice in 1992. He explained that his findings were not inconsistent with Dr. Gabbert's earlier diagnosis, even though Dr. Gabbert had found no damage to the anterior cruciate ligament during the arthroscopic surgery in 1987, because an anterior cruciate ligament tear is very difficult to diagnose by testing or even by arthroscopic surgery. Dr. Zeluff indicated that even a torn ligament can look normal on arthroscopic examination, especially following a lapse of time between the injury and the examination. Brown & Root nonetheless denied coverage for the surgery and temporary total disability compensation, contending that it was not liable for the nonindustrial slip on the ice that created Wardrop's current need for surgery. Wardrop applied for a hearing with the Industrial Commission in May of 1993.

On July 31, 1994, an administrative law judge ("ALJ") conducted a hearing on Wardrop's claim and found that the accident in 1992 was a natural consequence or progression of the 1987 injury and that therefore Brown & Root was liable for the medical expenses for corrective surgery. The ALJ held that the injury was compensable regardless of the aggravation, if any, that was caused by the 1992 injury because it was causally related to the 1987 industrial injury. The ALJ rejected Brown & Root's defense that the 1988 medical expense amendment to Utah Code Ann. § 35–1–99(2) applied retroactively to bar Wardrop's claim, and awarded Wardrop temporary total disability compensation.

Brown & Root filed a motion with the Industrial Commission for review of the ALJ's decision, asserting that (a) Wardrop's injury and surgery in 1992 were unrelated to his 1987 industrial accident; (b) the 1988 medical expense amendment to section 35–1–99(2) should be applied retroactively as a bar to Wardrop's claim for medical treatment; (c) the ALJ erred in not referring this controversy to a medical panel; and (d) the ALJ erred in refusing to allow Brown & Root to cross-examine Wardrop concerning his crimi-

nal record. The Commission specifically denied each of these points and affirmed the ALJ. Brown & Root sought further review with the court of appeals, where, in addition to arguing that section 35–1–99(2) should be applied retroactively and that the causation issue should have been referred to a medical panel, Brown & Root also asserted that Wardrop's claim for temporary total disability compensation was barred by the statute of limitations.

At the time of Wardrop's first accident in 1987, there was no time limitation on coverage for medical expenses under the Workers' Compensation Act, although one existed for compensation. In 1987, section 35–1–99 provided in relevant part that "if no claim for compensation is filed with the Industrial Commission within three years after the date of the accident or the date of the last payment of compensation, the right to compensation is wholly barred." Utah Code Ann. § 35–1–99 (Supp.1987). This court has construed "compensation" as used in this version of the statute to exclude medical expenses. *Kennecott Copper Corp. v. Industrial Comm'n,* 597 P.2d 875 (Utah 1979). In 1988, the Utah Legislature amended section 35–1–99 to add subsection (2), which provides:

> In nonpermanent total disability cases, an employee's medical benefit entitlement, ... ceases if the employee does not incur, and submit to his employer or insurance carrier for payment, for a period of three consecutive years medical expenses reasonably related to the industrial accident.

Utah Code Ann. § 35–1–99(2) (1988).[1] The court of appeals determined that section 35–1–99(2) is a statute of limitations and, therefore, purely procedural. *Brown & Root,* 905 P.2d at 307. Recognizing that strictly procedural statutory amendments may be applied retroactively, the court held that the amendment to section 35–1–99(2) should be applied to bar Wardrop's claim for medical expenses where Wardrop's last previous claim was paid by Brown & Root in 1988, more than three years prior. *Id.* at 308. The court also held that Wardrop's claim for temporary total disability compensation was barred by the

1. Section 35–1–99(2) was subsequently recodi-    fied at Utah Code Ann. § 35A–3–417(1) (1997).

1988 enactment of section 35–1–99(3).[2]  *Id.* Both the Commission and Wardrop petitioned this court for a writ of certiorari to review the court of appeals' decision, which we granted.  917 P.2d 556.

## ANALYSIS

### I.  RETROACTIVE APPLICATION OF SECTION 35–1–99(2)

■ We now determine whether the 1988 amendment to section 35–1–99(2) should be applied retroactively to bar Wardrop's claim for medical expenses.  This is a question of statutory construction, a question of law reviewed by this court under a "correction of error" standard.  *State v. Harmon,* 910 P.2d 1196, 1199 (Utah 1995); *Zissi v. State Tax Comm'n,* 842 P.2d 848, 852 (Utah 1992).

■ The general rule is that statutes are not applied retroactively unless retroactive application is expressly provided for by the legislature.  *See* Utah Code Ann. § 68–3–3 (1996) .("No part of these revised statutes is retroactive, unless expressly so declared."); *National Parks & Conservation Ass'n v. Board of State Lands,* 869 P.2d 909, 912 (Utah 1993).  The legislature did not declare that the 1988 amendment to 35–1–99(2) should be applied retroactively.  Thus, under the general rule, the amendment should not govern benefits for Wardrop's 1987 injury.  However, there are exceptions to the general rule against retroactive application of statutory amendments.  Amendments that are purely procedural may be given retrospective effect.  *Roark v. Crabtree,* 893 P.2d 1058 (Utah 1995); *Pilcher v. State Dep't of Social Servs.,* 663 P.2d 450 (Utah 1983).  This is a narrow exception, *Washington Nat'l Ins. Co. v. Sherwood Assocs.,* 795 P.2d 665, 668 n. 5 (Utah.Ct.App.1990), and "only procedural changes 'which do not enlarge, eliminate, or destroy vested or contractual rights' may be applied retroactively."  *Salt Lake Child & Family Therapy Clinic, Inc. v. Frederick,* 890 P.2d 1017, 1020 (Utah 1995) (quoting *Pilcher,* 663 P.2d at 455).  A "substantive" change, or one that affects substantive rights, may not be applied retroactively.

*Ball v. Peterson,* 912 P.2d 1006, 1009 (Utah. Ct.App.1996).  As stated by the court of appeals in *Washington National,* " 'Substantive law is defined as the positive law which creates, defines and regulates the rights and duties of the parties and which may give rise to a cause of action.…' "  795 P.2d at 669 (quoting *Petty v. Clark,* 113 Utah 205, 192 P.2d 589, 593–94 (1948)).  In contrast, procedural law merely "pertains to and prescribes the practice and procedure or the legal machinery by which the substantive law is determined or made effective."  *Id.*  Thus, statutory changes are purely procedural only where they provide a " 'different mode or form of procedure for enforcing substantive rights.' "  *Id.* at 667 (quoting *Pilcher,* 663 P.2d at 455).

■ Petitioners are correct in their assertion that in workers' compensation claims, the law existing at the time of the injury applies in relation to that injury.  *Moore v. American Coal Co.,* 737 P.2d 989, 990 (Utah 1987).  Under the law in effect in 1987, payment for an injured worker's future medical expenses was an ongoing and indefinite obligation.  This obligation was enunciated by this court in *Kennecott Copper Corp.,* wherein we stated, "[T]he law is firmly established that, once it is determined that there was an industrial accident, there is no limitation as to the time during which the medicals must continue to be furnished."  597 P.2d at 877 (footnote omitted).  Thus, under the law in force at the time of the 1987 accident, Brown & Root had a legally defined obligation to provide Wardrop with continual coverage for any medical treatment causally related to the compensable injury.  *See Kennecott v. Anderson,* 30 Utah 2d 102, 514 P.2d 217 (1973).  Wardrop also had a legally recognized expectation that he would continue to receive coverage indefinitely.  *See Salt Lake Child & Family Therapy Clinic,* 890 P.2d at 1020 (holding amendment to be substantive and could not be applicable retroactively because expectation that communications would remain private created vested right in privacy of those communications); *accord Washington Nat'l,* 795 P.2d at 670.  Consequently, Wardrop had a right to continued medical

**2.**  Section 35–1–99(3) was subsequently recodi-    fied at Utah Code Ann. § 35A–3–417(2) (1997).

coverage for his injuries, and the amendment to section 35–1–99(2), if applied retroactively, would substantively alter that right.

Any amendment that creates, defines, or regulates the rights and duties of the parties works a substantive change. *See Washington Nat'l*, 795 P.2d at 669. The 1988 amendment imposed a new regulatory scheme on injured workers' receipt of medical expenses by eliminating coverage where a worker has not received medical treatment within three consecutive years and also created a new duty for injured workers to seek medical treatment for their industrial injuries every three years to remain eligible for coverage. Thus, the act should not apply retroactively. *See Brunyer v. Salt Lake County*, 551 P.2d 521, 522 (Utah 1976) (holding that contribution statute established new duty and thus could not apply retroactively).

If applied retroactively, the 1988 amendment to section 35–1–99(2) would not only bar Wardrop's claim but would also bar other injured workers' claims for medical coverage where their injuries have not required regular and consistent treatment. If applied retroactively, this amendment would completely eliminate any further right to medical coverage for recurring or progressive injuries. This statutory change does more than provide a "different mode or form of procedure for enforcing substantive rights," *Washington Nat'l*, 795 P.2d at 667, it defines and regulates substantive rights.[3] In the cases cited by and relied upon by Brown & Root, no rights were cut off by a legislative amendment. The time to file a claim was simply shortened, but in each case, the claimant was afforded an opportunity to file. Thus the courts found no barrier to applying the amendment retroactively. *Pan Alaska Trucking, Inc. v. Crouch*, 773 P.2d 947 (Alaska 1989); *Harrelson v. Industrial Comm'n*, 144 Ariz. 369, 697 P.2d 1119 (Ct.App.1984); *Rusher v. Winningham Nissan Volvo, Inc.*, 550 So.2d 784 (La.Ct.App.1989); *State ex rel. Inland Div., Gen. Motors Corp. v. Anca*, 36 Ohio App.3d 38, 520 N.E.2d 1365 (Ct.App.

1986). In the statute at issue in *Oestreich v. Department of Labor & Industries*, 64 Wash. App. 165, 822 P.2d 1264 (1992), also relied upon by Brown & Root, the legislature used specific language in the amendment indicating its intent that it be applied retroactively. All of these cases are thus distinguishable from the instant case. We therefore hold that the 1988 amendment to section 35–1–99(2) is substantive in nature and should not be applied retroactively. We reverse the court of appeals and reinstate the decision of the Industrial Commission.

## II. TEMPORARY TOTAL DISABILITY COMPENSATION

■ The 1988 amendment to section 35–1–99 also added subsection (3), which provided:[4]

[A] claim for compensation for temporary total disability benefits, temporary partial disability benefits, permanent partial disability benefits, or permanent total disability benefits is wholly barred, unless an application for hearing is filed with the Industrial Commission within six years after the date of the accident.

Wardrop admittedly did not comply with that requirement. The court of appeals held that this amendment applied to and barred Wardrop's claim for temporary total disability compensation. Brown & Root now urge us to affirm the court of appeals in holding that subsection (3) applied to Wardrop's claim. In the alternative, Brown & Root argues that the pre-amendment version of section 35–1–99, in force at the time of Wardrop's 1987 injury, should be applied, requiring that a claim for compensation be filed within three years after the accident or three years after the last date of payment of compensation. § 35–1–99 (1987). Again, Wardrop did not comply with this deadline. He and the Commission contend, however, that Brown & Root did not raise either of these defenses before the ALJ or the Commission and that the court of appeals should not have relied on either of them in its review. We agree.

---

**3.** In so holding, we continue to define procedural amendments narrowly. In a majority of cases, Utah courts have held that statutory changes affect substantive rights and therefore have re-

fused to apply them retroactively. *See Washington Nat'l*, 795 P.2d at 668 n. 6.

**4.** *See supra* note 2.

Statute of limitations defenses are affirmative defenses and are waived unless properly raised. Brown & Root did not raise any statute of limitations as a defense in its answer to this claim of Wardrop as required by Commission rule R568–1–4.D. Although Brown & Root asserts that it raised a statute of limitations argument before the ALJ, no mention of any such statute appears in the findings of fact and conclusions of law or in the order. In its motion for review by the Commission, no specific mention of either statute was made by Brown & Root. The statutes were first raised as defenses in its brief filed in the court of appeals. However, neither Wardrop nor the Commission in their brief filed with the court of appeals called the court's attention to that fact. Only in its petition for rehearing did the Commission first object to the court's considering a statute of limitations defense.

We have consistently held that issues not raised in proceedings before administrative agencies are not subject to judicial review except in exceptional circumstances. *Pease v. Industrial Comm'n,* 694 P.2d 613, 616 (Utah 1984); *Alvin G. Rhodes Pump Sales v. Industrial Comm'n,* 681 P.2d 1244, 1249 (Utah 1984). No reason has been suggested why an exception should be made here. The rule that courts should not reach issues on review that were not raised before an administrative agency is so basic and necessary to orderly procedure that we will enforce it despite the lack of a timely objection by the Commission or Wardrop. We therefore conclude that the court of appeals erred in ruling on the issue of Wardrop's entitlement to temporary total disability compensation.

### III. MEDICAL PANEL

Brown & Root lastly contend that Wardrop's claim for surgery expenses should have been referred by the Commission to a medical panel. Medical panel referral in workers' compensation cases is governed by section 35–1–77, which provides in pertinent part:

Upon the filing of a claim for compensation for injury by accident, ... arising out of and in the course of employment, and if

the employer or its insurance carrier denies liability, the commission *may* refer the medical aspects of the case to a medical panel appointed by the commission. § 35–1–77(1)(a) (1994) (emphasis added).[5] Thus, the Commission has discretion to refer a case to a medical panel. However that discretion is limited by its own administrative rule. That rule provides in part:

A. A panel will be utilized by the Administrative Law Judge where:

1. One or more significant medical issues may be involved. Generally a significant medical issue must be shown by conflicting medical reports. Significant medical issues are involved when there are:

. . . ,

(c) Medical expenses in controversy amounting to more than $2,000.

Utah Admin. Code R568–1–9 (1996). This rule requires the ALJ to submit the case to a medical panel when "[o]ne or more significant medical issues may be involved." A significant medical issue must generally be shown by conflicting medical reports. Thus, referral to a medical panel is mandatory only where there is a medical controversy as evidenced through conflicting medical reports. *Willardson v. Industrial Comm'n,* 904 P.2d 671, 674 (Utah 1995). Whether there are conflicting medical reports is a question of fact. We must uphold the Commission's factual findings if such findings are supported by substantial evidence based upon the record as a whole. *See* Utah Code Ann. § 63–46b–16(4)(g) (1993); *accord Zissi,* 842 P.2d at 852. When reviewing the Commission's application of its own rules, this court will not disturb the agency's interpretation or application of one of the agency's rules unless its determination exceeds the bounds of reasonableness and rationality. *Union Pac. R.R. v. Auditing Div.,* 842 P.2d 876, 879–80 (Utah 1992). Thus, we will overturn the agency's interpretation only if that interpretation is an abuse of discretion. *Willardson,* 904 P.2d at 675.

Brown & Root argues that there is a medical controversy over the cause of Wardrop's 1992 need for surgery. However, there are no conflicting medical reports on that issue.

---

5. Section 35–1–77 has now been recodified at Utah Code Ann. § 35A–3–601.

Only two medical reports address Wardrop's need. First, Dr. Mayer examined Wardrop in March of 1992 after his fall in late January and considered his medical history. He concluded that Wardrop suffered from an "[a]nterior cruciate insufficient right knee, with probably a stretched out anterior cruciate ligament which is essentially nonfunctional," and he recommended surgery. Next, Brown & Root sent Wardrop to Dr. Zeluff, who examined him and fully reviewed his entire medical history. Dr. Zeluff concluded that there was a "fairly strong probability that Wardrop's work injury probably caused a partial tear of the anterior cruciate ligament" and that a "minor subsequent twisting injury" could have completed the tear. He also explained why Wardrop's injury did not show up during Dr. Gabbert's arthroscopic examination in 1987. Dr. Zeluff wrote:

> It is also well known that partial tears of the ACL can, indeed, look fairly normal on even arthroscopic evaluation unless the injury is very, very fresh ... However, several weeks or months down the line, a partially torn ACL could appear to be normal.... I think it is a fairly logical and is a definite possibility that we could have seen here a partial tear of the ACL which may have appeared to look fairly normal to Dr. Gabbert ... but was sufficiently weak that even a minor subsequent twisting injury could have completed the tear of the anterior cruciate.

Dr. Zeluff and Dr. Mayer were the only two doctors that examined Wardrop after his 1992 injury. Their reports do not conflict on the issue of causation. Indeed, Dr. Zeluff is the only doctor to address the possible causal relationship between Wardrop's 1987 injury and his need for surgery in 1992. Dr. Zeluff opined that there was a fairly strong probability that Wardrop's need for surgery in 1992 was caused by the completion of a tear to the ACL that existed as a result of the 1987 injury. The differing opinions about the severity of Wardrop's injury in 1987 are not conflicting medical reports concerning the *causation* of Wardrop's need for surgery in 1992. Consequently, the Commission's determination that *no medical controversy existed* was supported by the facts, and the Commission was not bound to refer this case to a medical panel.

## CONCLUSION

Section 35–1–99(2), as amended in 1988, may not be applied retroactively to bar Wardrop's claim because the amendment was not merely procedural. Because Brown & Root did not raise any statute of limitations defense to Wardrop's claim for temporary total disability with the Commission, it was procedural error for the court of appeals to address this issue for the first time on appeal. We reverse the court of appeals' decision and reinstate the Commission's award of medical expenses and temporary total disability compensation. The record also supports the Commission's findings that there was no significant medical controversy about the causal relationship between Wardrop's accident in 1987 and his need for surgery in 1992. Thus, the Commission's decision not to refer this issue to a medical panel was proper and will not be disturbed.

ZIMMERMAN, C.J., STEWART, Associate C.J., and DURHAM and RUSSON, JJ., concur in Justice HOWE's opinion.