2016 UT App 48

## THE UTAH COURT OF APPEALS

ERNEST HEALTH, INC. AND
NORTH RIVER INSURANCE COMPANY,
Petitioners,
*v.*
LABOR COMMISSION AND MARTIE BREIVIK,
Respondents.

Memorandum Decision
No. 20141138-CA
Filed March 10, 2016

Original Proceeding in this Court

Nancy C. Hummel, Attorney for Petitioners

Gary E. Atkin and Marsha S. Atkin, Attorneys for
Respondent Martie Breivik

Jaceson R. Maughan, Attorney for Respondent
Labor Commission

JUDGE STEPHEN L. ROTH authored this Memorandum Decision, in
which JUDGES MICHELE M. CHRISTIANSEN and KATE A. TOOMEY
concurred.

ROTH, Judge:

¶1      On October 22, 2009, Martie Breivik, who was employed at the time as a medical secretary at Utah Valley Specialty Hospital, fell while walking in to work and hit her right hand on the cement ground, causing her to "hyper extend[] her right small finger [and] right ring finger." There is no dispute that her fall was an industrial accident covered by Utah's Workers' Compensation Act. The following month, an MRI revealed ligament damage to her hand but no fractures. In December 2009, Breivik was diagnosed with complex regional pain syndrome, anxiety, and depression, all of which originated from

the fall. Breivik continued to work for Utah Valley Specialty Hospital in a light-duty capacity until October 31, 2011, when she was terminated "because she did not have a full work release." In August 2013, Breivik applied for permanent-total-disability compensation. *See generally* Utah Code Ann. § 34A-2-413 (LexisNexis Supp. 2015).[1] On May 28, 2014, an administrative law judge (the ALJ) made a preliminary determination that Breivik was permanently and totally disabled as a result of her industrial accident. *See* Utah Admin. Code R612-200-5(C) (stating that permanent total disability claims arising under section 34A-2-413 of the Utah Code "require[] a two-step adjudicative process": first, a "preliminary determination whether the applicant is permanently and totally disabled" and, second, a determination "whether the applicant can be reemployed or rehabilitated"); *see also Thomas v. Color Country Mgmt.*, 2004 UT 12, ¶ 21, 84 P.3d 1201 ("Section 34A–2–413(6) . . . requires that a finding be issued in two parts—an initial finding and a final finding. The initial finding of permanent total disability triggers a review period in which the employer or its insurance carrier may submit a reemployment plan.").[2] The Labor Commission (the Commission) upheld the ALJ's decision.

---

1. Because the statutory provisions in effect at the relevant times do not differ materially from the statutory provisions now in effect, we cite the current edition of the Utah Code Annotated for convenience.

2. The Utah Supreme Court has held that

> [a]lthough a Commission finding pursuant to Utah Code section 34A-2-413 of permanent total disability is 'not final' under that statute until certain second-step proceedings take place, such a finding does constitute a 'final agency action' within the meaning of [the Utah Administrative
>
> (continued…)

¶2    Ernest Health, Inc.[3] and North River Insurance Company (collectively, Ernest Health) seek judicial review of the Commission's decision affirming the ALJ's order awarding permanent-total-disability-compensation benefits to Breivik. Ernest Health argues: first, that the Commission erred by not remanding the case and directing the ALJ to reopen the evidentiary record and consider newly obtained video surveillance and the supplemental medical report that accompanied it; second, that the Commission erred by not remanding the case and directing the ALJ to make a referral to a medical panel; and third, that the ALJ's order provides an insufficient basis for Ernest Health to develop a re-employment plan. We do not disturb the Commission's ruling.

## I. Motion to Reopen the Evidentiary Record

¶3    Ernest Health asserts that "[s]ection 63-46b-8(1)(a) of the Utah Administrative Procedures Act requires that ALJs obtain full disclosure of relevant facts" and argues that the Commission should have granted its motion to reopen the evidentiary record and admit additional evidence. Specifically, Ernest Health argues that the Commission erred by not remanding the case to

---

(…continued)
    Procedures Act] for purposes of appellate judicial
    review.
*Ameritemps, Inc. v. Utah Labor Comm'n*, 2007 UT 8, ¶ 13, 152 P.3d 298; *see also Ameritemps, Inc. v. Labor Comm'n*, 2005 UT App 491, ¶¶ 11–16, 128 P.3d 31 (articulating the difference between a "final order" for enforcement purposes and a "final agency action" for purposes of appellate judicial review), *aff'd*, 2007 UT 8, 152 P.3d 298; *id.* ¶¶ 17–19, 25 (concluding that the Labor Commission's finding of permanent total disability constitutes a final agency action subject to appellate judicial review).

3. Utah Valley Specialty Hospital is owned by Ernest Health, Inc.

the ALJ to consider newly obtained video surveillance of Breivik in conjunction with the accompanying supplemental medical report from Ernest Health's independent medical examiner.

¶4 Approximately four months after the evidentiary hearing on Breivik's permanent disability petition (and approximately three months after the ALJ's order), Ernest Health moved the Commission to reopen the evidentiary record, stating that "[i]n anticipation of the hearing on the reemployment plan" it had "conducted surveillance of [Breivik] on various dates [during July and August of 2014]."[4] Ernest Health requested that the evidentiary record be reopened so it could "present evidence" of the video surveillance of Breivik, taken months after the conclusion of the hearing, along with the supplemental medical report. According to Ernest Health, because Breivik's testimony about her limitations "served as a substantial basis for the ALJ's order" and "[t]he video provides direct and concise evidence that [Breivik] was not truthful in her testimony," the ALJ's order was based on "[a] flawed foundation." Ernest Health now argues that "[w]ithout a review of the relevant and outcome determinative surveillance video, [it is] substantially prejudiced [because] the agency action is based upon a determination of fact that is not supported by substantial evidence when viewed in light of the whole record[] before the court."

¶5 In its order affirming the ALJ's decision, the Commission stated,

---

4. The evidentiary hearing was held on April 30, 2014, and the ALJ's findings of fact, conclusions of law, and order were issued approximately one month later on May 28, 2014. On September 4, 2014, Ernest Health submitted an "Amended Motion to Review or In the Alternative, Motion to Reopen Evidentiary Record Based on Newly Obtained Evidence."

> As a preliminary matter, the [Commission] rejects Ernest [Health's] attempt to submit additional evidence, including surveillance video of Ms. Breivik, which was not presented before [the ALJ]. The [Commission] does not agree with Ernest [Health] that the proffered new evidence warrants re-opening of the evidentiary record. Ernest [Health] has not provided sufficient explanation as to why it waited until after the close of the record to obtain the proffered evidence. The [Commission] therefore did not consider such evidence.

Ernest Health filed a Motion for Reconsideration, and the Commission again re-affirmed that "the late-submitted evidence was properly excluded [by the ALJ] . . . and cannot be the basis for referral to an impartial medical panel."

¶6      Rule 602-2-1 of the Utah Administrative Code sets forth the pleading and discovery procedures for an adjudication of workers' compensation benefits before the Commission. *See* Utah Admin. Code R602-2-1. It provides that "the evidentiary record shall be deemed closed at the conclusion of the hearing and no additional evidence will be accepted without leave of the [the ALJ hearing the case]." *Id.* R602-2-1(I)(8). We "will not disturb the agency's interpretation or application of one of the agency's rules unless its determination exceeds the bounds of reasonableness and rationality." *Brown & Root Indus. Serv. v. Industrial Comm'n of Utah*, 947 P.2d 671, 677 (Utah 1997) (citation omitted). In addition, the Commission is afforded broad discretion in determining how best to conduct its inquiry into each case: "The commission may make its investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of the chapter." Utah Code Ann. § 34A-2-802(1) (LexisNexis 2011). In particular, "whether further findings are made is a

matter of discretion with the Commission." *Jones v. Ogden Auto Body*, 646 P.2d 703, 705 (Utah 1982) (per curiam).

¶7     We are not persuaded that the Commission's decision to exclude Ernest Health's late-submitted evidence exceeded the bounds of the Commission's discretion. The Commission concluded that Ernest Health had not provided a "sufficient explanation" of why it could not have obtained similar evidence prior to the hearing and, indeed, did not demonstrate that it had even made any attempt to do so. Instead, Ernest Health simply stated to the Commission that the surveillance on Breivik was conducted "[i]n anticipation of the hearing on the reemployment plan," without further elucidation. And on review Ernest Health has not provided any more of an explanation than it did to the Commission for its delay in obtaining the surveillance video, stating only that it "obtained the video in order to prepare for the second step proceeding." Neither the statement made to the Commission nor the statement made in its briefing make any attempt to explain why Ernest Health was unable to obtain the surveillance video during the period prior to the evidentiary hearing before the ALJ. As a consequence, before this court, Ernest Health has simply reinforced the Commission's conclusion that it "has not provided sufficient explanation as to why it waited until after the close of the record to obtain the proffered evidence."

¶8     Furthermore, the Commission's broad discretion to "make its investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties," Utah Code Ann. § 34A-2-802(1), seems to encompass both a determination whether new evidence is significant enough to require further factual inquiry into the claimant's condition and, as particularly pertinent here, whether "the proffered evidence . . . was unreasonably late . . . to warrant reopening the evidentiary proceedings," *Timpanogos Hosp. v. Labor Comm'n*, 2011 UT App 106, ¶ 5, 251 P.3d 855 (internal quotation marks

omitted); *see also Carradine v. Labor Comm'n*, 2011 UT App 212, ¶ 2, 258 P.3d 636 (concluding that the Commission did not abuse its discretion by refusing to reopen a hearing based on an "untimely proffer of evidence"); *Timpanogos Hosp.*, 2011 UT App 106, ¶ 5 ("We are not convinced that the Commission abused its discretion when it determined that the proffered evidence . . . was unreasonably late . . . to warrant reopening the evidentiary proceedings." (internal quotation marks omitted)).[5]

¶9 Here, Ernest Health has failed to persuade us that the Commission abused its discretion by finding the surveillance video and accompanying supplemental medical report to be untimely. Instead, Ernest Health merely argues that the

---

5. With regard to the substance of the video, Ernest Health seems to be contending that Breivik's condition was not as grave as she claimed at the hearing. Ernest Health alleges that the surveillance video shows that Breivik "can clearly use her right hand, use her left hand, drive, walk without a cane, drive with children in the car, throw a rock with her right hand, [and] hold cups in her right hand." Breivik, however, argues that the video is equivocal at best. She points out, for example, that at the hearing before the ALJ, she testified that she can drive, shop at the grocery store, and complete laundry, but only "one shirt at a time." Breivik also points out that the record shows that her disabilities affect her less during the warmer months and that the video was taken in the summer. Given the foregoing, Breivik denies that the content of the video actually calls her impairment into question because "[h]er problem with engaging in gainful employment . . . was *not an inability to do anything at all* but, rather, the inability to engage in the necessary actions on a regular and consistent enough basis to be able to maintain gainful employment." (Emphasis added.) Because we affirm the Commission's decision on other grounds, we do not reach the merits of the dispute over the interpretation of the video.

proffered new evidence itself justifies reopening the evidentiary record. But this is insufficient to demonstrate that the Commission abused its discretion when it determined to "not consider such evidence."

## II. Referral to a Medical Panel

¶10    Ernest Health next argues that the Commission erred by not remanding the case to the ALJ for referral to a medical panel, because "the medical records show a conflict of opinion" between Breivik's treating physician, Dr. Chung, and Ernest Health's independent medical examiner, Dr. Colledge. The decision to refer medical aspects of a disability compensation case to a medical panel is generally a matter of discretion. *See* Utah Code Ann. § 34A-2-601(1)(a) (LexisNexis Supp. 2015). "[R]eferral to a medical panel is mandatory only where there is a medical controversy as evidenced through conflicting medical reports." *Brown & Root Indus. Serv. v. Industrial Comm'n of Utah*, 947 P.2d 671, 677 (Utah 1997) (citation omitted); *see also* Utah Admin. Code R602-2-2(A) ("A panel will be utilized by the [ALJ] where one or more significant medical issues may be involved. Generally a significant medical issue must be shown by conflicting medical reports."). "Whether there are conflicting medical reports is a question of fact." *Brown & Root*, 947 P.2d at 677. "We must uphold the Commission's factual findings if such findings are supported by substantial evidence based upon the record as a whole." *Id.* "An administrative law decision meets the substantial evidence test when a reasonable mind might accept as adequate the evidence supporting the decision." *Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, 2007 UT 42, ¶ 35, 164 P.3d 384 (citation and internal quotation marks omitted); *see also Hurley v. Board of Review of the Indus. Comm'n*, 767 P.2d 524, 526–27 (Utah 1988) ("An agency's findings of fact, however, are accorded substantial deference and will not be overturned if based on substantial evidence, even if another conclusion from the evidence is permissible.").

¶11   Here, the Commission considered Ernest Health's argument that "the medical aspects of Ms. Breivik's claim must be referred to an impartial medical panel according to Commission rules" because "there are significant medical issues regarding . . . Ms. Breivik's claim for permanent total disability compensation." In its ruling affirming the ALJ's order, the Commission adopted the ALJ's extensive findings of fact. Those factual findings included a summary of the medical evidence related to the industrial accident and a detailed discussion of the medical problems the ALJ determined were a result of Breivik's October 2009 fall. The Commission found that "the opinions of Dr. Chung and Dr. Colledge do not necessarily conflict with each other" and concluded that "referral to a medical panel is [not] required." Based on the ALJ's fact findings, the Commission went on to explain,

> Dr. Chung concluded as of June 2013 that Ms. Breivik was not employable due to her pain condition and unstable emotional state. While Dr. Colledge at one point found that Ms. Breivik could work in a sedentary position if motivated, he later changed his assessment and described that he would not anticipate Ms. Breivik being able to work with her dominant right hand. When comparing such opinions from Dr. Chung and Dr. Colledge, the [Commission] concludes that referral to a medical panel is not required under rule R602-2-2(A).

On review, Ernest Health has not engaged with the Commission's reasoning and has therefore failed to carry its burden to demonstrate that the Commission's decision was not based upon substantial evidence. Likewise, Ernest Health has not persuaded us that it was unreasonable for the Commission to determine that there was no actual conflict between Dr. Chung's opinion and Dr. Colledge's opinion. Instead, it merely

re-argues the evidence in favor of its position that Breivik is employable with accommodations and leaves it to us to consider whether the Commission's contrary conclusion is the result of medical reports that actually conflict. *Cf. Timpanogos Hosp.*, 2011 UT App 106, ¶¶ 3–4 (recognizing that although the reports submitted by various doctors may have been "somewhat incomplete," "limited," demonstrated "varying degrees of conviction," or failed to "challeng[e] the existence of the condition head on," the Commission did not abuse its discretion because there was "no actual conflict").

¶12 In fact, Ernest Health's entire argument that there is a conflict between the medical opinions is as follows:

> In the present case, Dr. Chung initially indicated on January 5, 2012, that [Breivik] was capable of working [as] long as she was not forced to use her right hand constantly and as long as she was allowed to frequently [rest] her right hand. On March 15, 2012, Dr. Chung indicated that if [Breivik] could find an employer that would accommodate her need to avoid constant repetitive use of her right hand that she would be able to work but that . . . she would have problems finding an employer that would be willing to accommodate her. On June 13, 2013, Dr. Chung indicated that [Breivik] could work if she could find an employer that would accommodate her need to avoid constant repetitive use of her right hand.

> Dr. Colledge examined [Breivik] on February 5, 2014 with contradictory findings. Dr. Colledge found [Breivik's] effort inconsistent and questionable and contacted Dr. Chung. Dr. Colledge indicated that [Breivik] has very minimal pathology along with her significant subjective

symptom complaints and that if she were so motivated she could perform at a sedentary capacity. Dr. Colledge issued an addendum and indicated again that [Breivik's] complaints were very disproportionate to her initial cause of injury. Dr. Colledge indicated that many individuals with right hand/upper extremity amputations perform at high levels in spite of their loss. He indicated the difference between disability and impairment is motivation.

In this case, the medical records show a conflict of opinion between Dr. Chung and Dr. Colledge regarding [Breivik's] impairment and functional and mental capacity. This discrepancy is further borne out by the addendum report of Dr. Colledge dated August 24, 2014.[6]

¶13 In this argument, Ernest Health relies on three reports from Dr. Chung to assert that Breivik is employable: first, a January 5, 2012 report that states that "[Breivik] *is capable of working* as long as she is not forced to use her right hand constantly and is allowed to frequently rest her right hand"; second, a report from March 15, 2012, that states that "if [Breivik] can find an employer that would accommodate her need to

---

6. Dr. Colledge's August 24, 2014 supplemental report was based on Ernest Health's post-hearing video surveillance of Breivik. Because we have declined to disturb the Commission's denial of Ernest Health's motion to reopen the evidentiary record to receive the video and the supplemental report, we decline to consider Dr. Colledge's supplemental report in our analysis of whether there was a conflict of opinion between Dr. Chung and Dr. Colledge that required the Commission to refer the matter to a medical panel.

avoid constant repetitive use of her right hand that *she would be able to work*"; and finally a report from June 13, 2013, which Ernest Health characterizes as stating that "[Breivik] *could work* if she could find an employer that would accommodate her need to avoid constant repetitive use of her right hand."[7] (Emphases added.) And with regard to Dr. Colledge, Ernest Health asserts that his assessment of Breivik "indicate[s] that [Breivik] has very minimal pathology along with her significant subjective symptom complaints" and that "if she were . . . motivated" she would be employable "at a sedentary capacity." Ernest Health seems to argue that Dr. Colledge also considered Breivik's ability to work with only one hand when it referenced Dr. Colledge's statement that "many individuals with right hand/upper extremity amputations perform at high levels in spite of their loss."

¶14   But based on the argument Ernest Health has presented on judicial review, the significance of any conflict that it perceives between Dr. Chung's opinion and Dr. Colledge's opinion is obscure at best. In fact, although Ernest Health emphasizes an apparent disagreement between the two doctors

---

7. The June 13, 2013 report states the opposite. In that report Dr. Chung ultimately opines,

> I again discussed with [Breivik] that I no longer believe she is employable. Her pain has gotten to the point where she can't concentrate. Her emotions due to her chronic pain have gotten extremely labile. I am completely supportive of her decision to apply for long term disability. I don't want her applying for more jobs and going to interviews only to fail getting the jobs. At this point I believe those interviews which have only been leading to failure for the past four years [are] counterproductive.

regarding whether Breivik's symptoms are entirely consistent with her injury, Ernest Health's characterization of the opinions of both Dr. Chung and Dr. Colledge appears to a significant degree to find them in agreement: with accommodations, Breivik is employable. And while Dr. Chung ultimately opined that Breivik had become unemployable and the Commission recognized this in its decision to uphold the award of permanent total disability, Ernest Health's cryptic analysis does not include that information or analyze how any divergence in the medical views of the two doctors actually contradicts the Commission's finding that "the opinions of Dr. Chung and Dr. Colledge do not necessarily conflict with each other."

¶15    Further, our own review of Dr. Chung's and Dr. Colledge's medical reports corroborates the Commission's factual determination that there was no significant conflict of medical opinion between the reports. If an agency's findings of fact are supported by substantial evidence, we will decline to disturb those findings "even if another conclusion from the evidence is permissible." *Hurley v. Board of Review of the Indus. Comm'n*, 767 P.2d 524, 526–27 (Utah 1988). Ernest Health has not satisfied the burden of showing that there is no substantial evidence to support the Commission's decision that the medical reports were not in conflict. Therefore it has not persuaded us that the Commission erred in deciding not to refer the matter to a medical panel.[8]

---

8. While it is true that Ernest Health described some conflicts between the reports of Dr. Chung and Dr. Colledge in the statement of facts section of its brief, including differing opinions on whether Breivik is employable, Ernest Health has done nothing in the argument section of its brief to demonstrate how the facts it describes in its statement of facts undermine the Commission's finding that the medical opinions "do not necessarily conflict with each other" such that there is no

(continued…)

## III. Re-employment Plan

¶16    Finally, Ernest Health argues that the ALJ's order "requir[ing] [Ernest Health] to submit a re-employment plan" is insufficient because the ALJ's order failed to "specify [Breivik's] work abilities" or "identify specific restrictions" and that as a result, Ernest Health was impeded in its "ability to submit an appropriate re-employment plan." Ernest Health contends that "[w]ithout specific work restrictions, [it is] substantially prejudiced as the ALJ failed to resolve one of the key issues requiring resolution." Ernest Health claims that "[t]he ALJ's conclusions are inadequate for [its] vocational expert to prepare a reemployment plan that will allow [Breivik] to return to gainful employment."

¶17    "Our rules clearly state that a petitioner's brief must 'contain the contentions and reasons of the [petitioner] with respect to the issues presented . . . with citations to the authorities, statutes, and parts of the record relied on.'" *A & B Mech. Contractors v. Labor Comm'n*, 2013 UT App 230, ¶ 21, 311 P.3d 528 (alteration and omission in original) (quoting Utah R. App. P. 24(a)(9)). "To satisfy rule 24(a)(9), the argument 'must provide meaningful legal analysis.'" *Wilson v. IHC Hosps., Inc.*, 2012 UT 43, ¶ 121, 289 P.3d 369 (quoting *West Jordan City v.*

---

(…continued)

substantial evidence to support it. Simply put, Ernest Health does not support its argument with specific facts, and we decline to take up that task for it here. *See State v. Thomas*, 961 P.2d 299, 305 (Utah 1998) ("Implicitly, rule 24(a)(9) [of the Utah Rules of Appellate Procedure] requires not just bald citation to authority but development of that authority *and reasoned analysis based on that authority*." (emphasis added)); *see also* Utah R. App. P. 24(a)(9).

*Goodman*, 2006 UT 27, ¶ 29, 135 P.3d 874). Ernest Health has not met its burden here.

¶18     The ALJ made specific findings that Breivik "experiences severe pain in several of her extremities" including "the right shoulder, left hand, hips, thighs, knees and feet"; that she "has difficulty gripping, lifting and writing"; that she "can't use the last 3 digits of her right hand" or "the pointer finger and thumb on her left hand"; that she "suffers from anxiety and depression" and that she "has difficulty with her memory and concentration" as well as "emotional . . . problems" as a result of the industrial accident. Ernest Health does not refer to or even acknowledge these findings, much less point out how they fall short of what is required by law under the circumstances of this case. Indeed, Ernest Health has not directed us to any statute, rule, or case law that addresses the level of specificity the law requires in the context of a re-employment plan order. Further, Ernest Health has not explained in any detail what additional findings would be necessary as a practical or legal matter for it to prepare a re-employment plan. In fact, Ernest Health fails to explain what a re-employment plan is or where it fits within the statutory or regulatory scheme applicable to the kind of disability at issue here. Accordingly, Ernest Health has failed to develop its argument or provide any meaningful legal analysis. As a consequence, we are not persuaded that any claimed shortcomings in the ALJ's findings substantially impeded Ernest Health's ability to submit a re-employment plan.

¶19     For the reasons stated above, we decline to disturb the Commission's order.

——————