2020 UT App 49

## THE UTAH COURT OF APPEALS

PATRICK J. O'CONNOR,
Petitioner,

*v.*

LABOR COMMISSION AND
EMPLOYERS' REINSURANCE FUND,
Respondents.

Opinion
No. 20190145-CA
Filed March 26, 2020

Original Proceeding in this Court

Phillip B. Shell, Attorney for Petitioner

Edwin C. Barnes and Robert D. Andreasen,
Attorneys for Respondents

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS concurred.

HAGEN, Judge:

¶1 Following a workplace-related injury in May 1983, Patrick J. O'Connor applied for disability benefits. O'Connor was preliminarily found to be permanently and totally disabled, and the Labor Commission (the Commission) ordered the Employers' Reinsurance Fund (ERF) to pay him $241 each week for the remainder of his life. In 1988, the legislature amended the law to provide that the minimum payment rate for permanent and total disability benefits would be equal to 36% of Utah's average weekly wage. Because the average weekly wage grew over time, there came a point—in 2008—when O'Connor's static weekly payment of $241 fell below the new percentage-based statutory minimum amount. Thereafter, O'Connor petitioned the Commission to increase his disability award from a static $241 per week to a variable 36% of Utah's current average weekly

wage. The Commission denied the petition, and O'Connor now seeks judicial review of that decision. We conclude that the law in effect at the time of O'Connor's injury—and not the 1988 amendment—governs the amount of compensation to which O'Connor is entitled. Accordingly, we decline to disturb the Commission's decision.

BACKGROUND[1]

¶2      O'Connor suffered a workplace-related injury on May 3, 1983. In March 1987, the Commission ordered ERF to pay O'Connor permanent total disability benefits in the amount of $241 per week. ERF has made weekly payments of $241 to O'Connor ever since. Those facts are not in dispute.

¶3      Also relevant to our review, however, is the statutory history concerning the minimum amount of weekly benefits to which permanently and totally disabled workers are entitled. Under the statutory framework at the time of O'Connor's injury, injured workers were entitled to receive 66⅔% of their wage from their employers or their employers' insurers for 312 weeks. Utah Code Ann. § 35-1-67 (Allen Smith Co. Supp. 1981). After the initial 312-week period following the injury, responsibility for the payments would shift to ERF, triggering a separate minimum and maximum benefit provision. *Id.* Between 1971 and 1985, the legislature periodically amended this provision to increase the minimum weekly benefit to which permanently and totally disabled workers were entitled. *See, e.g., id.* § 35-1-67 (Supp. 1983) (increasing the minimum weekly benefit from $100 to $110). Each time the legislature amended the statute, it

_____

1. In reviewing an order from the Commission, we view the facts in the light most favorable to the Commission's findings and recite them accordingly. *See Utah Paiute Tribal Housing Auth. Inc. v. Department of Workforce Services*, 2019 UT App 191, n.1, 454 P.3d 865.

included a retroactivity clause specifying that the newly increased minimum applied to "[a]ll persons who are permanently and totally disabled" and entitled them to benefits, regardless of when their injury occurred. *See, e.g., id.*

¶4 The legislature amended the statute again in 1988. But instead of merely increasing the minimum weekly benefit for permanently and totally disabled workers, it adopted a formula from which a new minimum could be calculated each year without the need to continually revise the statute. The new formula provided that "during the initial 312-week entitlement, compensation shall be 66⅔% of the employee's average weekly wage at the time of the injury." *Id.* § 35-1-67(2) (Michie 1988). Then, "[a]fter the initial 312 weeks, the minimum weekly compensation rate . . . shall be 36% of the current state average weekly wage, rounded to the nearest dollar." *Id.* § 35-1-67(2)(c).[2] Notably, unlike previous iterations of the statute, neither the 1988 amendment nor subsequent versions of the statute contained a retroactivity clause.

¶5 Due to a combination of inflation and rising wages, the minimum weekly benefit under the new calculation increased significantly in the decades following 1988. In July 2008, Utah's average weekly wage had increased such that the minimum weekly benefit under the new calculation method was greater than the $241 that O'Connor received each week under the Commission's 1987 award.

¶6 O'Connor filed an application for hearing with the Commission, asserting that he was entitled to increased benefits because his current weekly payments from ERF were less than 36% of Utah's average weekly wage. Both O'Connor and ERF filed cross-motions for summary judgment. O'Connor argued

---

2. This remains the formula by which the minimum weekly benefit is calculated today. Utah Code Ann. § 34A-2-413(2) (LexisNexis 2019).

that he was entitled to increased benefits because the 1988 amendment applied retroactively to his claim; ERF took the opposite position. An administrative law judge (the ALJ) agreed with O'Connor and granted his motion for summary judgment.

¶7     ERF filed a motion for review with the Commission, challenging the ALJ's ruling. The Commission issued an order reversing the ALJ's decision and concluding that "the 1988 statutory change regarding the minimum weekly benefit for permanent and total disability compensation" was not retroactive and so did not apply to O'Connor's claim.

¶8     O'Connor now seeks judicial review of the Commission's order.

ISSUE AND STANDARD OF REVIEW

¶9     O'Connor argues that the Commission erred in concluding that the current statutory minimum weekly benefit for permanent and total disability compensation is not retroactive and that the law in effect at the time of his injury governed the calculation of benefits. "Whether a statute operates retroactively is a question of law, which we review for correctness," affording no deference to the Commission. *See State ex rel. Kirby v. Jacoby*, 1999 UT App 52, ¶ 7, 975 P.2d 939 (cleaned up).[3]

---

3. O'Connor also raises a constitutional claim, arguing that applying "the statute only to those injured after the effective date of the 1988 amendment would treat similarly situated disabled workers differently" in violation of the equal protection guarantees of the Fourteenth Amendment to the United States Constitution and article I, section 24 of the Utah Constitution. However, apart from identifying the alleged classification of

(continued…)

ANALYSIS

¶10 The sole issue on appeal is whether the current or past version of the disability benefits statute applies to O'Connor's claim. Generally, unless a statute is expressly declared to be retroactive, a statutory bar prevents retroactive application of newly enacted laws. *See* Utah Code Ann. § 68-3-3 (LexisNexis 2016) ("A provision of the Utah Code is not retroactive, unless the provision is expressly declared to be retroactive."). Here, the parties agree that the statute does not contain an express declaration of retroactivity. *See id.* § 34A-2-413 (2019).

¶11 However, O'Connor argues that this case falls under an exception to the general bar on retroactivity because the amendment is a "procedural" change as opposed to a "substantive" change. It is true that prior Utah cases made that distinction, occasionally characterizing the "rule governing the applicability of changes in procedural rules as an exception to the bar against the retroactive application of statutes." *State v. Clark*, 2011 UT 23, ¶ 13, 251 P.3d 829. But our supreme court has since clarified that that characterization is "imprecise." *Id.* Rather, older retroactivity cases distinguishing between

_____

(…continued)

injured workers, O'Connor fails to flesh out his constitutional argument by identifying "what level of scrutiny should apply, or why, assuming rational basis review, there is no rational basis for treating" the purported classes differently. *See Rose v. Office of Prof'l Conduct*, 2017 UT 50, ¶ 81, 424 P.3d 134. And it goes "without saying that merely identifying classes is not enough to demonstrate an equal protection violation." *Id.* Because O'Connor has not carried his burden of persuasion on judicial review, we decline to disturb the Commission's decision on this basis. *See Snyder v. Labor Comm'n*, 2017 UT App 187, ¶ 23, 405 P.3d 984 (declining to disturb the Commission's decision where a petitioner's "inadequate briefing resulted in a failure to meet his burden of persuasion").

procedural and substantive amendments should be understood to stand for "the simpler proposition that we apply the law as it exists at the time of the event regulated by the law in question." *Id.*

> Thus, if a law regulates a breach of contract or a tort, we apply the law as it exists when the alleged breach or tort occurs—i.e., the law that exists at the time of the event giving rise to a cause of action. Subsequent changes to contract or tort law are irrelevant. Similarly, if the law regulates a motion to intervene, we apply the law as it exists at the time the motion is filed. A change in the procedural rule would not apply retroactively to prior motions to intervene. We would not expel a party for failure to conform to a newly amended intervention rule in her prior motions.

> The difference is in the nature of the underlying occurrence at issue. On matters of *substance* the parties' primary rights and duties are dictated by the law in effect at the time of their underlying primary conduct (e.g., the conduct giving rise to a criminal charge or civil claim). When it comes to the parties' *procedural* rights and responsibilities, however, the relevant underlying conduct is different: the relevant occurrence for such purposes is the underlying procedural act (e.g., filing a motion or seeking an appeal). The law governing this procedural occurrence is thus the law in effect at the time of the procedural act, not the law in place at the time of the occurrence giving rise to the parties' substantive claims.

*Id.* ¶¶ 13–14. Accordingly, the more precise question at issue is not whether the 1988 amendment was "substantive" or "procedural" but, rather, what "event" is being regulated by the law in question and, further, when that event occurred.

¶12    O'Connor contends that the event being regulated is the moment that his disability payments fell below the statutory minimum, an event that occurred for the first time in 2008. According to O'Connor, this must be the case because ERF's liability for the minimum payment could not have arisen until 36% of the average state wage exceeded his weekly award, and the "event" being regulated is that which "giv[es] rise to a cause of action." *Id.* ¶ 13. In contrast, ERF contends that the event being regulated is O'Connor's injury, which occurred in 1983; it asserts that this must be the case because O'Connor's entitlement to benefits, including the statutory minimum benefit, arose at the time of the injury.

¶13    ERF's position is more consistent with Utah Supreme Court caselaw on workers' compensation. Our supreme court has long held that the law governing the amount of compensation to which an injured worker is entitled is the law in effect at the time of injury. *See, e.g.*, *Petersen v. Utah Labor Comm'n*, 2017 UT 87, ¶ 1 n.1, 416 P.3d 583 ("This court applies the law as it existed at the time of the injury."); *Utah State Road Comm'n v. Industrial Comm'n*, 168 P.2d 319, 320 (Utah 1946) ("[T]he law governing this case is that which was in effect when the injury occurred."). For example, in *Brown & Root Industrial Service v. Industrial Commission of Utah*, 947 P.2d 671 (Utah 1997), the court analyzed whether an amendment affecting workers' compensation applied retroactively to bar an injured worker's claim. The court held that the amendment did not apply retroactively and that the law existing at the time of injury governed because the amendment did not regulate a "mode or form of procedure." *Id.* at 676 (cleaned up). Rather, the amendment regulated the "substantive rights" of the injured worker at the time that he was injured and so did not apply retroactively. *Id.*

¶14    As O'Connor points out, our supreme court has applied some amendments affecting workers' compensation benefits retroactively. In *Marshall v. Industrial Commission*, 704 P.2d 581 (Utah 1985), the court held that a statute providing for interest

payments on past-due workers' compensation benefits applied to an action seeking benefits for an injury sustained before passage of the statute. *Id.* at 583. However, as the *Marshall* court explained, "[i]nterest on a compensation award is incident to a right and a remedy that already exists." *Id.* Injured workers do not have a claim for interest until disability benefits to which they are entitled become overdue. In contrast, injured workers become entitled to receive a minimum benefit on the date that they are injured. *Cf. Utah State Road Comm'n*, 168 P.2d at 320 (declining to apply a statutory maximum that limited an injured worker's total benefits because it was not "in effect when the injury occurred"). Despite holding that the interest payment statute applied retroactively, the *Marshall* court was clear that "the benefits to be awarded to an injured worker are to be determined on the basis of the law as it existed at the time of the injury." 704 P.2d at 582.

¶15    In this case, similar to *Brown & Root*, the statute at issue directly regulates the benefits to which an injured worker is entitled at the time of injury. *See* 947 P.2d at 676. Specifically, because O'Connor was injured in 1983, he was initially entitled to receive at least 66⅔% of his average weekly wages, so long as it did not exceed 85% of the state average weekly wage at the time of injury. *See* Utah Code Ann. § 35-1-67 (Allen Smith Co. Supp. 1981). After the initial 312 weeks following his injury, when responsibility for the payments shifted to ERF, O'Connor was guaranteed to receive no less than $100 per week. *See id.* His entitlement to the $100-per-week statutory minimum arose at the time of his injury, even though the minimum would not apply, if at all, until 312 weeks passed.[4]

---

4. Although an amendment increasing the statutory minimum benefit to $110 passed in 1983, it did not go into effect until six days after O'Connor's injury. *See* Utah Code Ann. § 35-1-67 (Allen Smith Co. Supp. 1983).

¶16     If, as O'Connor contends, subsequent amendments to the statutory minimum applied to workers injured before the amendment's effective date, an amendment reducing—or even eliminating—the statutory minimum would reduce the benefit to which workers were otherwise entitled based on the law in effect at the time of their injuries. Such a result would be in tension with *Brown & Root* because it would reach back and alter the substantive right to benefits guaranteed to injured workers at the time of their injuries. *See* 947 P.2d at 676. When O'Connor was injured in 1983, he was entitled to the minimum benefits guaranteed under existing law. Absent express direction from the legislature to apply subsequent amendments to the class of workers injured before the effective date, the statute in effect at the time of the injury continues to control the calculation of benefits.

¶17     Accordingly, O'Connor is not entitled to have his $241 weekly award increased to match the current statutory minimum benefit. The law as it existed at the time of O'Connor's injury in 1983 governs the amount of benefits to which he is entitled.

CONCLUSION

¶18     The statute regulates benefits to which injured workers are entitled at the time that they are injured, so the law as it existed at the time of O'Connor's injury governs the amount of minimum benefits to which he is entitled. Accordingly, we decline to disturb the Commission's decision that O'Connor was not entitled to an increase in his weekly benefits.

_____